Battle, J.
 

 The charge of his Honor to the jury, as to the effect of the testimony, in relation to the character of the prisoner was, in our opinion, erroneous. It is not a rule of law that, in a plain case, the jury must not consider the evidence of the prisoner’s good character, and that it is only “ in a
 
 *67
 
 doubtful case that he lias a right to have it cast into the scales and weighed in his behalf.” It is admitted that, in all cases, a person accused of a crime of any grade, whether a felony or a misdemeanor, has a right to offer in his defense testimony of his good character. Whatever is admitted as competent evidence must be for the consideration of the jury. Who, then, is to decide whether the case is a plain one, by which the testimony is to he withdrawn from them ? It cannot be the court, because that would be deciding on the facts, and thus usurping the province of the jury. It cannot be the j ury, because that would be deciding the preliminary question of competency, and thus usurping the province of the court. The advocate of the rule is thus placed in a dilemma, by taking either horn of which he is involved in an absurdity. The true rule is, that the testimony is to go to the jury, and be considered by them, in connection with all the other facts and circumstances, and if they believe the accused to be guilty, they must so find, notwithstanding his good character.
 

 The pretended rule probably grew out of a remark which a Judge might very properly make to a jury, that if they believed the defendant was guilty, they ought not to acquit, although he had proved that he was a man of good character. Such a remark, properly understood, does not withdraw the consideration of character from the jury ; it presupposes that the testimony of character has been duly weighed by them, and it can legitimately operate only as a caution to the jury; thus the testimony is not of itself to preponderate over all the other facts and circumstances given in evidence, and thus produce an acquittal, merely because the party charged had previously borne a good character. The Judges, no doubt, insensibly fell into the habit of varying the remark, so as to give it the form and effect of the rule to which we now object. Its inconsistency has not escaped the attention and animadversion of distinguished law-writers and jurists both in England and in this country. Sir William Russel, in his work on crimes and misdemeanors, says “ it has been usual to treat the good character of the party accused, as evidence to
 
 *68
 
 be taken into consideration only in doubtful cases. Juries have generally been told that where the facts proved are such as to satisfy their minds of the guilt of the party, character, however excellent, is no subject for their consideration ; but when they entertain any doubt as to the guilt of the party, thejr may properly turn their attention to the good character which he has received. It is, however, submitted with deference, that the'good character of the party accirsed, when satisfactorily established by competent witnesses, is an ingredient which ought
 
 always
 
 to be submitted to the consideration of the jury, together with the other facts and circumstances of the case. The matter of the charge, and the evidence by which it is supported, will often render such ingredient of little or no avail, but the more correct course seems to be, not in any case to withdraw it from consideration, but to leave the jury to form their own conclusion upon the evidence, whether an individual, whose character was previously unblemished, has, or has not, committed
 
 the
 
 particular crime for which he is called upon to answer2 Russ, on Cri. and Mis. 704.
 

 The celebrated sergeant (afterwards Judge,) Talfourd, in commenting upon these remarks, said, “ We may be permitted to add, that according to the language frequently adopted by Judges, in their charges, it may be proved that character is, in no case, of any value. They say that in a clear case, character has no weight, but if the case be doubtful — if the scale hangs even — the jury ought to throw the weight of the character into the scale and allow it .to turn the balance in the prisoner’s favor; but the same Judges will tell juries that in every doubtful case they ought to acquit, stopping far short of the even balance, and that the prisoner is entitled to the benefit of every reasonable doubt; in clear cases, therefore, the character is of no avail, and in doubtful cases it is not wanted; it is never to be considered by the jury but when the jury would acquit without it. The sophism lies in the absolute division of cases into clear and doubtful, without considering character as an ingredient which may render
 
 *69
 
 that doubtful which would otherwise be clear. There may certainly be cases so made out that no character can make them’ doubtful, but there may be others in which evidence given against a person without character would amount to conviction, in which a high character would produce a reasonable doubt, nay, in which character will actually out-weigh evidence which might otherwise appear conclusive. It is, in truth, a fact varying greatly in its own intrinsic value according to its nature ; varying still more in its relative value, according to the proofs to which it is opposed, but always a fact, fit, like all other facts, proved in the cause, to be weighed and estimated by the jury.” See Dickin. Quar. Sess. (6th Ed.) 563; "Whar. Am. Grim. Law, sec. 644.
 

 These observations show us that, even in England, where a greater latitude is allowed to Judges in expressing to the juries their opinions upon the weight and effect of testimony, the rule in question is not firmly established as a rule of law, and much less can it be tolerated in this State, where the Judges are restricted by the act of 1796, (Rev. Code, ch. 31, sec. 130,) from interfering with the peculiar province of the jury in deciding upon all questions of fact.
 

 This supposed rule, in relation to the effect of character, is somewhat analogous to that laid down by the highest English law writers upon the subject of the testimony of the prosecu-trix in an indictment for rape. Lord Hale (who is followed substantially by East, Blackstone and Russell,) says, “if she presently discover the offense and make pursuit after the offender,” &c., “ these, and the like circumstances, give greater probability to her testimony. But if she conceal the injury for any considerable time after she had opportunity to complain,”
 
 &c.,
 
 “ these, and the like circumstances, carry a strong presumption that her testimony is false or feigned.” In the case of the
 
 State
 
 v.
 
 Cone,
 
 1 Jones’ Rep. 18, it was held that such circumstances as the above, may very well be considered by the jury in their enquiry as to the guilt or innocence of the prisoner, but that it is not proper for a Judge in this State to lay them down as rules of law.
 

 
 *70
 
 As the prisoner is entitled to a new trial for the error of the Judge, above specified, it is not absolutely necessary for us to notice the other alleged errors assigned in the prisoner’s bill of exceptions. It may not be amiss, however, for us to remark, that the testimony which was offered to prove that the prosecutrix liad made an indecent exposure of her person to the other slaves belonging to the owner of the prisoner, was irrelevant for any purpose, because it was not shown that the prisoner was informed of it.
 

 "Whether, if he knew of it, it would make the testimony competent, is at present a hypothetical question, upon which we give no opinion. The judgment must be reversed, and a
 
 venire de novo
 
 awarded to the prisoner.
 

 Pee Cuexam, Judgment reversed.