## STATE v. JAMES LAXTON.

### *Evidence — General Reputation.*

Where a defendant in a criminal action introduces evidence as to his good character, the right of reply of the State is limited to evidence of general reputation and does not extend to rumors in regard to a particular matter. *Therefore*, where upon a trial for rape the defendant introduced evidence as to character, and a witness for the State was permitted to testify that there was a general rumor in the neighborhood of his (defendant's) running after one certain white woman; *Held* to be error.

(*State* v. *Henry*, 5 Jones, 65; *State* v. *Johnson*, 1 Winst. 151; *Luther* v. *Skeen*, 8 Jones, 356, cited and approved.)

INDICTMENT for Rape, tried at Fall Term, 1876, of CALDWELL Superior Court, before *Buxton J.*

The only question decided by this Court was one of evidence which arose in consequence of the admission of testimony relating to the character of defendant.

The case states: "Among the witnesses called by the State to impeach the general character of the prisoner (which character the prisoner put in evidence by previously examining other witnesses) was one Edmund Tilley, who testified 'I am acquainted with the general character of prisoner before this occurrence; it was good for truth, honesty and hard work.' Question by the Solicitor—'What was his general character in other respects?' Ans.—'There has been a general rumor in the neighborhood of his running after one certain bad white woman.'" The counsel for the prisoner objected to both question and answer. Objection overruled.

Verdict of guilty. Judgment. Appeal by prisoner.

*Attorney General*, for the State.
*Mr. G. N. Folk*, for the prisoner.

FAIRCLOTH, J.   The defendant was indicted for rape and after the evidence on the merits of the case was closed, he proved a good character and the Solicitor called a witness in reply, who also testified to the good character of the defendant "for truth, honesty and hard work." The Solicitor then asked his witness "what was his general character in other respects?" The witness answered, "there has been a general rumor in the neighborhood of his running after one certain bad white woman."

This question and answer were objected to by the prisoner, but were admitted by His Honor and allowed to go to the jury as evidence.

In all criminal trials the issue to be determined is made by the pleadings in the record, and the introduction into the case of evidence in regard to character necessarily raises a collateral question, calculated to some extent to divert attention from the real issue.

At an early period, however, the rule was established in capital felonies *in favorem vitæ*, on the presumption that a man of good character would not be likely to commit a heinous crime. But under this rule the witness was not allowed to give his individual opinion of the prisoner nor to speak of particular facts, but was limited to general character which is described by Erskine as the "slow spreading influence of opinion arising from the deportment of a man in society. As a man's deportment, good or bad, necessarily produces one circle without another and so extends itself till it unites in one general opinion, that general opinion is allowed to be given in evidence."

The above rule admitting general evidence of character as a part of the defence was so manifestly just and reasonable and appealed so strongly to the common sense of the country, that it was soon extended to all criminal proceedings in England and has ever been the law in this country.

At first however it was attempted to be applied *only* in doubtful cases, but this notion was soon exploded, because it was seen that if the evidence was not admitted in plain cases, it could avail the prisoner nothing in doubtful cases, as it was the duty of the jury in such cases to acquit without the aid of evidence of good character. *State* v. *Henry*, 5 Jones, 65.

The State has the right to rebut the defendant's evidence and when he has introduced evidence to prove a good character, the State may prove it bad, if it can, either by cross-examination or by other witnesses. The evidence is clearly admissible. *Rex* v. *Fannard*, Carrington & Payne 673 ; 2 Hawkins P. C. ch. 46. § 206.

This right of reply however is only co-extensive with the privilege of the defendant and is limited to evidence of general reputation. If it were extended to particular facts and the opinion of witnesses, it would multiply collateral questions and would lead in many instances to scandalous inquiries and to the embarrassment of the jury. This would be original evidence in reply.

In an action of slander in this State, the defendant was allowed to prove a "current report" in regard to a particular matter and this Court held that the evidence was inadmissible. *Luther* v. *Skeen*, 8 Jones, 356. And that case is decisive of the question now before us. And in strict adherence to this principle it was held by this Court, that where the defendant offered proof of the character he sustained at the time of the alleged offence, evidence could not be permitted in reply of his character at any subsequent period. *State* v. *Johnson*, Winst. 151.

There is error. Let this be certified to the end that the Court below may proceed according to law.

PER CURIAM.                               *Venire de novo.*