## STATE v. GEORGE SPURLING.

*Evidence—Character of Prosecutor or Defendant Who Testify as Witnesses—The Code, Section* 1353.

When a prosecutor or defendant in a criminal action *goes upon the stand as a witness*, he becomes just as any other witness, and his general character can be proven, not only as it was before a charge affecting it was made, but as it is at the date he goes upon the stand.

INDICTMENT for slander of an innocent woman, tried before *Robinson, J,* at Fall Term, 1895, of SWAIN Superior Court.

There was evidence of slanderous words spoken by defendant concerning prosecutrix, amounting to a charge of incontinence. Defendant offered evidence tending to prove that prosecutrix was not an innocent woman when he used the language charged.

Prosecutrix was examined by the State, and, after such examination, a witness was put on by the State who testified that the prosecutrix's character was good up to the time this trouble began. On cross-examination, this witness was asked by defendant's counsel: "What is her character now?" The State objected, and the objection was sustained. The court ruled that defendant could only impeach the character of the prosecutrix for truth since the slanderous words were spoken.

Defendant excepted, and, upon a verdict being rendered against him and sentence passed, he appealed.

*The Attorney General,* for the State.
*Messrs. J. F. Ray* and *G. S. Ferguson,* for defendant (appellant).

AVERY, J.: The rule that a defendant, on the trial of a criminal indictment against him, may offer evidence of his good character, was established after no little discussion and this right, at his option, to put his general reputation in issue, was eventually conceded, because it was argued that such testimony tended to raise a presumption of innocence.    But it was held in *State* v. *Johnson*, 1 Winston, 151, that such evidence ought to be confined to the time when the charge was first made, because a different rule would expose a defendant to the great danger of having his character ruined or badly damaged by " a popular prosecutor, stimulated to activity by the hope of thus making his prosecution successful."    Had the prosecutrix refrained from going upon the stand and put the proof of her good character in the scales to be weighed against the testimony of the defendant that he had had intercourse with her, the case would have been analogous to *State* v. *Winston*, *supra*, and the question raised would have applied only to her reputation up to the time of the alleged intercourse with the defendant.    If, in that event, the jury had found that she was free from reproach then, they could have given the fact such weight as they deemed proper, as against testimony tending to criminate her.    While she stood, as prosecutrix, in the attitude of a party whose character at a certain time was at issue, she was entitled, in the application of the principle laid down in *State* v. *Winston*, to restrict testimony of this kind within the same limits prescribed for the benefit of a defendant.    But the defendant proposed to impeach her, not as a prosecutrix who had put her character at the time of the alleged carnal intercourse in issue by offering to prove it good, but as a witness. Conceding that the same protection must be given to a prosecutrix as to the defendant, where neither of them goes upon the stand, but each is content to offer testimony of

good character, the defendant contends that when both become witnesses they both alike place themselves on a footing with all other witnesses.

Before the passage of the Act of 1881 (*Code*, Sec. 1353) the defendant could not testify, and when he elected to put his character in issue, as we have seen, he had the benefit of the restriction as to the limit of impeaching evidence, stated in *Winston's* case. But when that statute first came before the Court for construction, in *State* v. *Efler*, 85 N. C., 585, Justice RUFFIN, delivering the opinion of the Court, said: "We understand that he (the defendant) shall occupy the same position with any other witness, be under the same obligation to tell the truth, entitled to the same privileges, receive the same protection and be equally liable to be impeached or discredited. Unless willing to become a witness, he is invested with the presumption of innocence, such as the law makes in favor of every person accused of crime, and evidence cannot be offered to impeach his character unless he voluntarily puts it in issue. But by availing himself of the statute he assumes the position of a witness and subjects himself to all the disadvantages of that position, and his credibility is to be weighed and tested as that of any other witness." See also *State* v. *Lawhorn*, 88 N. C., 634; *State* v. *Ellis*, 97 N. C., pp. 449, 450, where the foregoing language is quoted. In *State* v. *Davis*, 92 N. C., 764, the Court said a defendant indicted for slandering an innocent woman "stood in the double capacity of defendant and witness" and quoted the rule already stated from *Efler's* case. The defendant Davis had gone upon the witness stand, as had the prosecutrix, but she had offered testimony to show her general character very good, as the Court said, "for chastity and truth," while the defendant offered no such evidence in his own behalf. It was there declared

legitimate to comment upon the fact that the defendant had failed to show his own character good, and to contrast his position with that of the prosecutrix; yet it was reiterated that he was entitled to all of the privileges accorded to any other witness, (including the prosecutrix,) and was "equally liable to be impeached or discredited." Could the defendant have been impeached by testimony similar to that declared by the court below incompetent as against the prosecutrix? In *State* v. *Efler*, *supra*, (p. 588,) referring to the contention of counsel that impeaching testimony should have been "confined to an inquiry as to the prisoner's general character for truth, and not permitted to extend to his general moral character," the court said: "In the case of *State* v. *Boswell*, 2 Dev., 209, it is said that ever since the year 1804 it has been an established rule of practice in this State to discredit a witness by making proof of his *general bad moral character*, and that the question need not be restricted to his *reputation merely for veracity*. That such continues to be the law of evidence, as administered in the courts of this State, is shown by the following cases: *State* v. *O'Neale*, 4 Ire., 88; *State* v. *Dove*, 10 Ired., 469; *State* v. *Parks*, 3 Ired., 296; and as the prisoner assumed the character of a witness he must needs come under the same rule." If then, the defendant was entitled to the same privileges and only equally liable to impeachment as a witness with the prosecutrix, it would follow that if he, as a witness, could not restrict the examination to character for truth instead of general moral character, she could not do so in this case. In giving the right to do so, we would accord to her protection and privileges superior to, instead of equal with, those granted to the defendant. The State offered a witness who testified that the general character of the prosecutrix was good up to the time of this prosecution. On

cross-examination the defendant proposed to ask the witness the question, " What is her general character now ? " On objection, the court held that defendant could not impeach her general character, since the slanderous words were spoken. In this ruling there was error. If we concede that there is no rule of evidence which extends to a prosecutrix in a case of this kind, when she assumes the role of a witness, any greater privileges than to other witnesses who have thus put their reputations in issue, then she subjected herself to liability to have her character tested by the general principles applicable to all alike. Clearly, it was competent to make the examination relate to the time of the trial. The question raised by the evidence was not alone whether her general character was good at the time when she was alleged to have had illicit intercourse with the defendant, but whether it was such as to commend her to the jury as a witness at the time of trial. There was a direct conflict on that day. Either was at liberty to show general evidence of moral depravity on the part of the other, but one had no superior right to that of the other. It is needless to discuss the exception to the charge. For the error in the admission of evidence the defendant is entitled to a new trial.

New Trial.