STATE OF NORTH CAROLINA v. TIMOTHY LANE McCORMICK

No. 54

(Filed 4 December 1979)

1. **Criminal Law § 89.1— character witness—general reputation of impeached witness—further testimony permitted when volunteered**

    Counsel may ask only about the general reputation or character of the witness to be impeached, but the impeaching witness, of his own volition, may say in which respect the witness's reputation is good or bad.

2. **Criminal Law § 89.1— character witness—general reputation of impeached witness—amplification improperly excluded**

    The trial court in a first degree burglary prosecution erred in refusing to allow a witness, who had testified for defendant that the prosecutrix had a bad reputation, to say in what respect the reputation was bad, since the witness could properly be prepared for trial by the defense attorney who could explain the applicable law in given situations and go over the attorney's questions and the witness's answers; there was no evidence that defense counsel procured the witness to give perjured testimony; and the witness's proffered testimony that the prosecutrix had a reputation in her community for being an untruthful woman pertained to the important and material issue of the credibility of the prosecutrix, and its exclusion was prejudicial to defendant.

APPEAL by defendant from his conviction of first degree burglary and sentence of life imprisonment imposed by *Smith (Donald L.), S.J.* at the 2 January 1979 Criminal Session of CUMBERLAND County Superior Court.

The State's evidence tended to show that between 3:00 a.m. and 4:00 a.m. on 28 February 1978, Beatrice Bethea was awakened in her home at 611 Monroe Drive in Cumberland County by the sound of voices outside her bedroom window. She saw one person leaning up against her back porch and hollered at him to "leave from around" her house. That person went around to the front of the house, knocked the wooden latch off the front door, cut the light on, and pushed her back into the bedroom. He told her to

take her clothes off. She hollered for help, pulled her pants off and got into bed.

A neighbor, Charles Haskins, responded to her call for help. Haskins began chopping on Bethea's bedroom door with an axe. The defendant discovered an axe in Bethea's bedroom and began chopping on the door from the inside. Defendant told Haskins to "wait, that he would come out." Haskins went outside and stood in the front yard. Defendant ran out, threw the axe at Haskins, striking him on the leg, and ran down the street.

Bethea and Haskins went to a neighbor's house. A few minutes later, defendant returned, went in the neighbor's house and asked Haskins if he could take him to a hospital. Haskins said no and defendant left. Bethea identified the defendant as Timmy McCormick and stated that, "I have been knowing Timmy since he was small."

Defendant testified that he heard Bethea hollering as he passed by her house and that he pushed his way into her house to protect her. He grabbed her and sat her down in a chair. When he heard someone come onto the porch, he took her into the bedroom and closed the door. Someone started beating on the door with an axe. Defendant told that person that he had an axe too. That person told defendant to "come outside, we'll settle this outside."

Defendant went outside and "threw the axe to keep him off of me, not to hurt nobody." Defendant ran down the street, but later returned and went to the neighbor's house where Bethea had gone. There, he saw the man he had struck with the axe and asked if he could take him to the hospital. When the man said no, defendant left.

Defendant testified that it was normal for Bethea to holler like that and he acted to protect her. He said that he did not harm her or threaten her. Testimony was offered that Bethea had attempted to drop the charges. Bethea testified that she did it because defendant's relatives threatened her.

After the testimony of the prosecutrix the trial court initiated plea negotiations between the State and the defendant and a plea bargain was offered wherein the State would allow the defendant to plead guilty to the lesser included offense of felonious breaking or entering and the court agreed that the

defendant would receive a six month jail sentence followed by special probation. The defendant declined to accept the plea bargain and the trial continued.

Defendant was convicted of first degree burglary and the mandatory life sentence in effect at the time of the conviction was imposed by the trial judge. Defendant appealed to this Court.

*Assistant Public Defenders Tye Hunter and James R. Parrish, Jr., for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas F. Moffitt for the State.*

COPELAND, Justice.

In his fifth assignment of error, defendant contends that the trial judge committed prejudicial error in improperly restricting the testimony of a defense witness as to the reputation of the prosecutrix, Beatrice Bethea. We agree; therefore, the defendant's conviction must be reversed.

[1]    The applicable law in this State provides that an impeaching character witness, who knows the general reputation and character of the witness about which he plans to testify, may state the reputation of the witness "categorically, *i.e.,* simply saying that it is good or bad, without more, or he may, *of his own volition, but without suggestion from counsel offering the witness,* amplify or qualify his testimony, by adding that it is good for certain virtues or bad for certain vices. . . ." *State v. McEachern,* 283 N.C. 57, 68, 194 S.E. 2d 787, 794 (1973), *quoting State v. Hicks,* 200 N.C. 539, 541, 157 S.E. 851, 852 (1931) (Emphasis added). (Citations omitted); *see also, State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333, *death sentence vacated,* 429 U.S. 809 (1976).

Before *State v. Hairston,* 121 N.C. 579, 28 S.E. 492 (1897), it was permissible to question a witness about the *general* reputation of the witness to be impeached, *State v. Efler,* 85 N.C. 585 (1881), *State v. Stallings,* 3 N.C. 300 (1804), and about that witness' reputation with respect to a specific character trait, *State v. Spurling,* 118 N.C. 1250, 24 S.E. 533 (1896), *Warlick v. White,* 76 N.C. 175 (1877).

However, since *Hairston* it has been the rule that counsel may only ask about the *general* reputation or character of the witness to be impeached. *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978); *State v. Pearson*, 181 N.C. 588, 107 S.E. 305 (1921); *State v. Neville*, 175 N.C. 731, 95 S.E. 55 (1918); *State v. Burton*, 172 N.C. 939, 90 S.E. 561 (1916). However, the impeaching witness, of his own volition, may say in what respect the witness' reputation is good or bad. *State v. McEachern, supra; State v. Hicks, supra; State v. Butler*, 177 N.C. 585, 98 S.E. 821 (1919); *State v. Summers*, 173 N.C. 775, 92 S.E. 328 (1917); *State v. Melton*, 166 N.C. 442, 81 S.E. 602 (1914); *Edwards v. Price*, 162 N.C. 243, 78 S.E. 145 (1913); *State v. Hairston, supra. See also*, Sizemore, *Character Evidence in Criminal Cases in North Carolina*, 7 Wake Forest L. Rev. 17 (1970).

[2]   Here, the witness, Jimmy Lee Davis, testified for the defendant that the prosecutrix had a bad reputation. The trial judge refused to allow the witness to say in what respect the reputation of the prosecutrix was bad. This testimony was not allowed because the trial judge felt that the witness had been coached and therefore could not give a voluntary or spontaneous answer.

There is absolutely no evidence in this case that defense counsel procured the witness to give perjured testimony. Defense counsel had a witness who would testify that Bethea had a reputation in her community for being an untruthful woman. It is not improper for an attorney to prepare his witness for trial, to explain the applicable law in any given situation and to go over before trial the attorney's questions and the witness' answers so that the witness will be ready for his appearance in court, will be more at ease because he knows what to expect, and will give his testimony in the most effective manner that he can. Such preparation is the mark of a good trial lawyer, *see, e.g.,* A. Morrill, *Trial Diplomacy*, Ch. 3, Part 8 (1973), and is to be commended because it promotes a more efficient administration of justice and saves court time.

Even though a witness has been prepared in this manner, his testimony at trial is still *his* voluntary testimony. Nothing improper has occurred so long as the attorney is preparing the witness to give *the witness'* testimony at trial and not the

testimony that the attorney has placed in the witness' mouth and not false or perjured testimony.

When a witness' testimony appears to have been memorized or rehearsed or it appears that the witness has testified using the attorney's words rather than his own or has been improperly coached, then these are matters to be explored on cross-examination, and the weight to be given the witness' testimony is for the jury. The sanctions of the Code of Professional Responsibility are there for the attorney who goes beyond preparing a witness to testify to that about which the witness has knowledge and instead procures false or perjured testimony. DR7-102, Code of Professional Responsibility.

From the record it appears that the witness had knowledge of Bethea's reputation for truthfulness and was prepared to give testimony to that effect. It was not error for the attorney to prepare the witness for the manner in which this testimony would be elicited on direct examination at trial. This proffered testimony was an attack on the credibility of the prosecutrix. The credibility of the prosecutrix was an important and material issue in this case. This testimony would have aided the jury in determining the believability of the testimony of the prosecutrix and thus the weight it should be given. Therefore, its exclusion was prejudicial error.

The record discloses what the excluded testimony of the witness would have been because at one point the witness answered defense counsel's question before the district attorney's objection was sustained. The better practice is for the trial judge to allow the attorney to make his offer of proof. The best manner in which to do this is to excuse the jury from the courtroom and then allow the witness to answer the question for the record. In order to determine whether the trial judge committed prejudicial error in excluding the testimony, it is necessary for the testimony to appear in the record; therefore, the trial judge should allow the attorney to make his offer of proof. *State v. Chapman,* 294 N.C. 407, 241 S.E. 2d 667 (1978); *North Carolina State Highway Commission v. Pearce,* 261 N.C. 760, 136 S.E. 2d 71 (1964); *In re Gamble,* 244 N.C. 149, 93 S.E. 2d 66 (1956); 1 Strong's N.C. Index 3d, *Appeal and Error* § 49.1 and cases cited therein.

We deem it unnecessary to discuss defendant's remaining assignments of error, inasmuch as the matters which gave rise to them probably will not recur on retrial.

New trial.