STATE OF NORTH CAROLINA v. WILLIE LEE SQUIRE

No. 530A86

(Filed 3 February 1988)

1. **Criminal Law § 85.1— character evidence—must be tailored to particular trait relevant to case**

Under N.C.G.S. § 8C-1, Rule 404(a)(1), an accused may no longer offer evidence of undifferentiated good character; rather, he must tailor the evidence to a particular trait relevant to an issue in the case.

**2. Criminal Law § 85.1— character evidence—general character trait admissible in context of proceedings**

The trial court erred in a prosecution for first degree murder in which defendant claimed self-defense by precluding defendant from offering evidence of character traits other than peacefulness and truthfulness. Although an accused must now tailor his character evidence to a pertinent, *i.e.* relevant, trait, the trait may be general in nature provided that it is relevant in the context of the crime charged. N.C.G.S. § 8C-1, Rule 404(a)(1).

**3. Criminal Law § 85.1— exclusion of character traits other than peacefulness and truthfulness—prejudicial**

The trial court's erroneous exclusion of character traits other than peacefulness and truthfulness in a prosecution for first degree murder was prejudicial where the case was close on the issue of whether the homicide was committed in self-defense, defendant demonstrated that the victim was a violent person who had directed his anger toward him in the past, and defendant also offered a plausible, corroborated explanation for his fear at the time he shot the victim.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Allsbrook, J.,* at the 5 May 1986 Criminal Session of Superior Court, NORTHAMPTON County, upon defendant's conviction of first degree murder. Heard in the Supreme Court on 15 October 1987.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the state.*

*Glover & Petersen, by James R. Glover, for defendant-appellant.*

EXUM, Chief Justice.

The question presented by this appeal is whether the trial court committed reversible error when it precluded defendant from offering evidence of character traits other than his traits for peacefulness and truthfulness. We hold that the trial court's decision to prohibit defendant from introducing evidence of other relevant character traits constituted prejudicial error.

I.

Both the state's and defendant's evidence tended to show that on 29 June 1985 James Ingram died as the result of a single gunshot wound from a .38 caliber pistol fired by defendant, Willie Lee Squire. The shooting took place around 8 p.m. at a softball

field in Northampton County known as Smith Field. About one hundred people were present at the ball field at the time of the shooting, many of whom had known both the victim and defendant all of their lives. Defendant's brother reported the shooting to the Northampton County Sheriff's Department. Defendant turned over the gun used in the incident and was taken to the Sheriff's Office in Jackson, North Carolina, where he gave a statement.

The dispute at trial concerned the circumstances that led to the shooting and the defendant's mental state when he fired the revolver. In particular, the trial related to defendant's claim that he shot in self-defense, out of fear that the victim was about to cause him serious harm.

The state's evidence tended to show that on the afternoon of his death the victim played two games of softball at Smith Field for a team composed of men from Gaston, North Carolina, against a team from Weldon, North Carolina. These games ended at approximately 6:30 after which women's teams from Gaston and Weldon played a doubleheader. After the men's games ended, some of the players gathered near a grill where food was being prepared. The victim was standing near the grill when a car in which defendant was a back-seat passenger drove up. Defendant's brothers, Josephus and Nathaniel, were in the front. According to Reginald Butcher and Larry Davis, who testified that they were with the victim at the grill, defendant yelled, "James come here." The victim walked to the car, and rested his hands on top. Butcher testified that defendant and the victim argued. After about thirty seconds, Butcher heard a shot and looked over to the car. The victim was grabbing his heart and saying "I'm shot."

Dazelle Williams, an assistant coach on the Weldon team, testified that she saw the victim approach defendant's car and then lay both hands on top of it. Ten to twenty seconds later the victim turned to his right and took one hand off the car. He put his hand back on the car. According to Williams, the victim looked as if he were about to walk away. A shot rang out, and the victim staggered away from the car.

Linwood Squire, Jr., a relative of both the victim and defendant, testified that two or three months before the date of the shooting he rode with defendant and Nathaniel Squire. According to Linwood Squire, defendant mentioned the victim and said,

"Cous, I know James is your first cousin, but he say anything to me, I'm going to kill the bitch."

Defendant's evidence tended to show that defendant was a staff sergeant in the United States Army. He served tours of duty in Italy, Germany and the United States. On the date of the shooting he was assigned to Fort Belvoir, Virginia. He was the Assistant Communications Chief for the 902nd Engineering Company. He received a number of awards and commendations during his military service, including three good conduct medals and the Army Commendation Medal.

Defendant put on evidence concerning the victim's character, which tended to show that the victim had a violent and aggressive nature. Katie Moody, the mother of two children by the victim, described several occasions when he assaulted her. Police records from Northampton and Halifax counties indicated that the victim was convicted of assault on Katie Moody three times. Defendant testified that in November 1984, the victim put a knife to defendant's throat and then cut him on the back of the neck when he discovered defendant and Moody riding in defendant's car. According to defendant, the victim issued repeated warnings to defendant to stay away from Moody. Gregory Barnes, a friend of Moody's, testified concerning three occasions when the victim threatened him with deadly weapons after finding him with Moody.

Defendant testified concerning the events surrounding the shooting, stating that he was in North Carolina on the day of the shooting in order to attend a cookout honoring his parents. While at home, he decided to go to Smith Field. There he saw the victim. The victim shouted at defendant, "Why are you down here?" Defendant responded that he had not said or done anything to anybody. The victim said, "While you are down here, you better watch yourself or your won't be around for long." Defendant left Smith Field, returning at a later time with his brothers. Defendant sat in the back seat of his car. Upon arriving at the ball field, the Squire brothers drove near the place where the victim stood beside the grill. The victim approached the car shouting to defendant, "[W]hat are you trying to prove?" and, "[G]et out of the damn car." Defendant did not leave the car. The victim then exclaimed, "[S]ince you won't get out, I'll knock your fucking eyes out." The victim then drew back his right hand, in which he held

a beer can, and reached into his pocket with his left hand. Defendant shot the victim. Defendant testified that he was afraid the victim was going to throw the can of beer in his face and come out of his pocket with a knife. Defendant maintained he was not trying to kill the victim but to disarm him.

Defendant presented testimony from his two brothers, Nathaniel and Josephus, which corroborated his version of the events. The jury returned a verdict of first degree murder.

## II.

Defendant contends the trial court committed reversible error when it precluded defendant from offering evidence of his good character traits other than peacefulness and truthfulness. We agree.

Before trial, the state served a Motion to Suppress, in which it moved the court, *inter alia*, "to exclude evidence of defendant's good character to show defendant's lack of a propensity to commit the crime of murder." At trial, a question posed by defense counsel on cross-examination of Officer Ellis Squire, a detective with the Northampton County Sheriff's Department, precipitated a hearing on the state's motion. Defense counsel asked, "[N]ow Officer Squire do you know Sergeant Willie Squire's character and reputation in the community in which he lives and has resided in Gaston, N.C.?" The state objected, arguing that evidence of general reputation and character is inadmissible under Rule 404(a)(1) of the North Carolina Rules of Evidence. The state contended that evidence of defendant's character should be limited to traits of peacefulness, in support of a claim of self-defense, and truthfulness, in support of his credibility as a witness. The trial court sustained the state's objection, ruling that defendant would be limited to offering evidence of his truthfulness if he testified as a witness, and evidence of his peacefulness if he offered evidence of self-defense.

We hold the trial court erred in limiting defendant to offering evidence of traits of peacefulness and truthfulness. While Rule 404(a)(1) requires that character evidence offered by an accused must be of a "pertinent" trait, it is not so narrow as to preclude evidence of character traits even though general in na-

ture provided that such traits are relevant to some issue in the case.

N.C.G.S. § 8C-1, Rule 404(a)(1) provides:

(a) *Character evidence generally.* — Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. — Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same. . . .

(1986). This rule became effective on 1 July 1984. It is a significant departure from our previous practice under the common law in that it permits an accused to introduce evidence of specific traits of his character. Under our previous rule, developed under the common law, the only method for introducing evidence of character was by general reputation. *See State v. McCormick*, 298 N.C. 788, 259 S.E. 2d 880 (1979); *State v. Hairston*, 121 N.C. 579, 28 S.E. 492 (1897); *see generally* 1 Brandis on North Carolina Evidence § 114 (1982). According to Dean Brandis, North Carolina was unique in prohibiting elicitation of evidence concerning particular character traits. 1 Brandis on North Carolina Evidence § 114 (1982). Rule 404(a)(1) abrogates this restriction, thus aligning North Carolina with the majority rule.

[1] An issue arising in the instant case is whether Rule 404(a)(1) not only permits but also requires that character evidence offered by an accused relate to a particular character trait. We conclude that under Rule 404(a)(1) an accused may no longer offer evidence of undifferentiated "good character" as permitted by our previous practice; rather, he must tailor the evidence to a particular trait that is relevant to an issue in the case. We find support for this conclusion in the Advisory Committee's Note on Rule 404(a)(1). According to the Advisory Committee, this rule differs with previous North Carolina practice in that it "speaks in terms of a 'pertinent trait of his character.' This limits the exception to relevant character traits, whereas North Carolina practice permits use of evidence of general character." Dean Brandis echoes this interpretation in his treatise on North Carolina evidence when he writes, "[i]t seems clear, therefore, that when character evidence

is circumstantial, counsel, on direct examination, shall inquire as to the trait involved, and not as to the 'general character' prescribed by prior case law. . . ." 1 Brandis on North Carolina Evidence § 114 (Cum. Supp. 1986).

Our determination that admissible character evidence must concern a particular character trait, rather than good character generally, coincides with the history of, and practice under, Federal Evidentiary Rule 404(a)(1). Federal Rule 404(a)(1), after which our rule is patterned, permits evidence of traits only. An earlier draft of the federal rule would have permitted evidence of character generally as well as evidence of particular traits. *See* Advisory Committee's Note to Rule 404; Proposed Federal Rules of Evidence 404(a)(1), 46 F.R.D. 161, 227 (1969). The draft was modified, however, and the language permitting evidence of general character was deleted. *Id.* The practice in federal courts is not to permit evidence of general good character, but to require that character evidence pertain to a particular trait. *See generally* 22 C. Wright & K. Graham, Federal Practice and Procedure § 5236 (1978). We find the history of the federal rule, and the practice in federal courts, instructive for the purpose of interpreting North Carolina Evidentiary Rule 404(a)(1) since our rule is identical to its federal counterpart. We believe that the practice under the federal rule lends support to our conclusion that character evidence must tend to establish a certain trait to be admissible under Rule 404(a)(1).

[2]   Having established that under Rule 404(a)(1) an accused must elicit evidence regarding particular character traits in his presentation of character evidence, it remains to be discussed what constitutes a "pertinent" trait within the rule's meaning. It is generally accepted that the term "pertinent," as used in Federal Rule 404(a)(1), is synonymous with "relevant." *United States v. Angelini*, 678 F. 2d 380, 381 (1982); 22 Wright & Graham, Federal Practice and Procedure § 5236 at 383. This meaning is also conveyed by the Advisory Committee in its commentary on North Carolina's rule when it explains that the rule limits an accused to offering evidence of "relevant character traits." Following the view evidenced by federal practice, and conveyed by the Advisory Committee's commentary on our rule, we believe that "pertinent" in the context of Rule 404(a)(1) is tantamount to relevant. Thus, in determining whether evidence of a character trait is ad-

missible under Rule 404(a)(1), the trial court must determine whether the trait in question is relevant; i.e., whether it would "make the existence of any fact that is of consequence to the determination of the action" more or less probable than it would be without evidence of the trait. N.C.G.S. § 8C-1, Rule 401.

Before the new rule, our law was clear that evidence of general good character was relevant to the issue of guilt or innocence of a criminal defendant. *State v. Huskins*, 209 N.C. 727, 184 S.E. 480 (1936); *State v. Morse*, 171 N.C. 777, 87 S.E. 946 (1916); *State v. Henry*, 50 N.C. 65 (1857); *See* 1 Brandis on North Carolina Evidence § 102 (1982). Under the present rule, an accused must tailor his character evidence to a "pertinent" trait, but the trait may be general in nature provided that it is relevant in the context of the crime charged.

An example of a character trait of a general nature which is nearly always relevant in a criminal case is the trait of being law-abiding. The admissibility of this trait has been the subject of several state and federal cases. The Fifth Circuit conducted a thorough survey and concluded that the "practice in the states has generally been to permit defendants to establish their character for lawfulness, and the federal courts have unanimously assumed that to be the practice." *United States v. Hewitt*, 634 F. 2d 277, 280 (5th Cir. 1981). Our cases reveal that the essence of our former rule permitting evidence of general good character was to enable an accused to illustrate his character for abiding by the law, thereby suggesting to the jury it would be out of character for him to have committed the crime charged. *See State v. Huskins*, 209 N.C. at 728, 184 S.E. at 481; *State v. Laxton*, 76 N.C. 216, 217 (1877); *see generally* 1 Brandis on North Carolina Evidence § 104 (1982).

Rule 404(a)(1) does not render evidence of the character trait of being law-abiding irrelevant in the context of a criminal proceeding. It merely enables the defendant to prove this trait directly rather than by implication. Evidence of other character traits which are general in nature may be likewise admissible under Rule 404(a)(1) provided that the traits are relevant in the context of the particular proceedings.

Applying these principles to the present case, we hold that while the trial court correctly sustained the state's objection to

defense counsel's question regarding defendant's general reputation in the community, it erred in ruling that defendant could not elicit evidence of character traits other than peacefulness and truthfulness. The trial court seems to have labored under the misconception, advanced by the state at trial, that evidence of a general character trait is not "pertinent" within the rule's meaning and is therefore inadmissible. The critical determination, however, is not whether a trait is general or specific, but whether it is relevant to the proceeding. As our cases illustrate, general traits of character are not less relevant because they are general. *See State v. McCormick*, 298 N.C. at 790-91, 259 S.E. 2d at 882; 1 Brandis on North Carolina Evidence §§ 104, 114 (1982). Indeed, in some cases, evidence of character traits which are general in nature may be the deciding factor in the determination of the defendant's guilt or innocence. Thus, an accused should not be prohibited from introducing this potentially exculpatory evidence.

[3] We hold further that under N.C.G.S. § 15A-1443(a) the trial court's error in precluding defendant from introducing evidence of character traits other than peacefulness and truthfulness prejudiced the defendant. According to this statute, nonconstitutional prejudicial error occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." N.C.G.S. § 15A-1443(a). This was a close case on the issue of whether the homicide was committed in self-defense. Defendant demonstrated that the victim was a violent person who had directed his anger toward him in the past. Defendant also offered a plausible explanation for his fear at the time he shot the victim which was corroborated by two witnesses. Evidence of favorable character traits other than peacefulness and truthfulness, such as, for example, being law-abiding which defendant clearly could have offered, might have weighed heavily in the jury's determination of whether the defendant acted in self-defense. Moreover, in the event the jury found defendant did not act in self-defense, such evidence might have influenced the jury to return a verdict of voluntary manslaughter or second degree murder rather than first degree murder.

While we ordinarily do not find reversible error in the exclusion of evidence unless the nature of the evidence excluded is clear from the record, the error here is more than simply the exclusion of discrete evidence. The error is the trial court's unwar-

ranted general prohibition of evidence of character traits other than peacefulness and truthfulness. This prohibition precluded defendant from offering evidence of at least one other relevant trait which he was obviously in a position to offer. In light of these things, the confusion among bench and bar engendered by this new evidence rule, and lack of guidance until now by this Court, we feel compelled to conclude that defendant is entitled to a new trial because of the trial court's restrictive ruling.

We conclude, therefore, that defendant has demonstrated a reasonable possibility that, had this erroneous ruling not been made, the result at trial would have been different.* The result is a

New trial.

---

* Defendant also contends that he deserves a new trial because of two instances of prosecutorial misconduct. We decline to address these issues because of the likelihood that they will not arise again at defendant's new trial.