STATE v. RAMSEUR

[112 N.C. App. 429 (1993)]

No error.

Judges ORR and McCRODDEN concur.

---

STATE OF NORTH CAROLINA v. CHRISTOPHER HUBERT RAMSEUR

No. 9325SC2

(Filed 2 November 1993)

1. **Evidence and Witnesses §§ 782, 2047 (NCI4th) — first-degree sexual offense with minor — evidence of character trait excluded — no prejudicial error**

   There was no prejudicial error in a prosecution for first-degree sexual offense involving defendant's eight year old daughter where the trial court excluded testimony that defendant ". . . could not do anything like this." Although such testimony is routinely admitted when introduced by the State to show a defendant's tendency to molest a child and assuming that the statement was sufficient to bring defendant's character into issue, there was no prejudice from its exclusion, whether the nonconstitutional or the constitutional standard is applied, because defendant conceded that the child had had sexual contact with someone due to the presence of a sexually transmitted disease and the evidence at trial overwhelmingly indicated that the sexual contact was by defendant, despite his evidence that he tested negative for any sexually transmitted disease approximately two months after the child was tested. N.C.G.S. § 15A-1443(a).

   **Am Jur 2d, Appeal and Error § 807.**

2. **Rape and Allied Sexual Offenses § 206 (NCI4th) — first-degree sexual offense — indecent liberties — not a lesser included offense**

   The trial court did not err in a prosecution for first-degree sexual offense by not instructing the jury on taking indecent liberties with a minor because indecent liberties is not a lesser included offense of first-degree sexual offense.

   **Am Jur 2d, Rape § 110.**

**3. Constitutional Law § 374 (NCI4th)— first-degree sexual offense — life sentence — not raised at trial — not unconstitutional**

Although a defendant who was given two life sentences for two counts of first-degree sexual offense did not raise the question at trial, it was noted that a life sentence for first-degree sexual offense has been upheld as constitutional.

**Am Jur 2d, Criminal Law § 625 et seq.**

Appeal by defendant from judgments entered 23 July 1992 by Judge Robert M. Burroughs in Catawba County Superior Court. Heard in the Court of Appeals 29 September 1993.

On 23 July 1992, defendant was convicted of two counts of first degree sexual offense. G.S. 14-27.4. On 23 January 1993, defendant received a sentence of life imprisonment for each count. Defendant appeals.

The evidence presented by the State tended to show the following: the victim in this case (hereinafter "the child") is the biological daughter of defendant and Melissa Gillespie (hereinafter "the child's mother"). Defendant had regular visitation rights after his paternity was established by blood tests when the child was a year old. The child was eight years old at the time of the offense.

The child's mother testified as follows: during the school year, the child would stay at defendant's parents' home every other weekend; during the summer, including the period of July-August 1991 (the time of the alleged offenses), the child would stay at defendant's parents' home for two or three weeks at a time. The child called defendant "daddy." The child's mother was separated from her current husband, Howard Gillespie, during the time of the alleged offenses. The child had no contact with Mr. Gillespie since the inception of their separation in March 1988.

The child testified as follows: she called defendant "daddy." She described her paternal grandparents' house, where she spent time with defendant and her grandparents during the summer of 1991. She testified that just before her visit to the doctor in August 1991, she had stayed "with my mom but I had been visiting with my grandparents." The child was asked to identify her genitalia and referred to her genitalia as her "private." The child testified that the doctor examined her "private." The doctor asked if some-

one had "bothered" her, and the child responded "my daddy." The doctor was the first person she told about this incident.

The child testified that she told the doctor that one night at her grandparents' house she finished watching television and went to her own bedroom where she fell asleep. The child was then asked on direct examination "how did you come to be in Mr. Ramseur's [defendant's] bedroom?" and the child responded "I just woke up. I first got in my bed and he took me to his bed." The child testified that defendant placed her on the bed in defendant's bedroom. Defendant removed her "panties." The child testified that defendant rubbed his hands "all over me" and that defendant "kissed me all over." The child testified that defendant licked her "on my private" and that during this time she was crying and scared. The child testified that defendant removed his clothes and rubbed his penis on her private parts.

The child was then asked "[h]ad your daddy ever done that to you before?" The child responded "yes" and stated "once was in the daytime" in the living room when "[g]randpa was at work and grandmother was gone." The child stated that "my daddy" removed her shorts and "panties." The child was then asked "[a]nd [when] you say your daddy, do you mean Chris Ramseur?" and the child responded "yes." Defendant rubbed his penis on her and it hurt. The child was asked, "[w]hy did you not tell somebody about that?" and the child responded "[b]ecause I was scared."

Dr. Moffead, a licensed doctor tendered as an expert witness in pediatric medicine, examined the child on 22 August 1991 after her mother brought her to his office to examine a vaginal discharge and "redness and irritation to the vaginal area." Dr. Moffead testified that the child tested positively for gonorrhea. Dr. Moffead's testimony corroborated the child's testimony at trial.

Patsy Ross of the Lincoln County Department of Social Services testified that she received Dr. Moffead's report and saw the child on 23 August 1991. She testified that the child told her that she (the child) had been abused by her daddy "more than once." Ms. Ross testified that "she [the child] said that her daddy had licked her on her private part and that he had put his penis part on her private part. . . . I asked her when was the last time it happened and she said she had just spent two weeks with her father and it happened while she was there with him." Additionally,

Ms. Ross testified that "I asked her what her daddy['s] name was and she told me Chris Ramseur [defendant]."

Ms. Ross further testified that she interviewed the child jointly with Steve Lail of the Catawba County Sheriff's Department. During this interview, the child stated that one of the instances of sexual abuse occurred after she had been to Carowinds on 4 July 1991. Ms. Ross stated that "we came up with the 6th of July [1991]." The second instance was estimated as occurring on 13 August 1991. During the interview, the child demonstrated the sexual abuse with anatomically correct dolls. Again, the child specifically identified defendant as the person who sexually abused her. Mr. Lail's testimony at trial corroborated Ms. Ross' recitation of the child's testimony at the joint interview.

Defendant's evidence tended to show the following: the child's mother testified on cross-examination that while she and Mr. Gillespie lived together, the child called Mr. Gillespie "daddy." The child's mother also testified that the child also called one of her boyfriends, Mr. Bryant, "daddy." The child's mother further testified that she had another boyfriend, Rodney Brice, who was in jail from March 1991 until August 1991. The child's mother admitted that the child "called everyone that lived with you [the child's mother] daddy." The child's mother stated that defendant "was not a good daddy as far as really taking care of her."

Several of defendant's relatives testified. Defendant's father testified that from his own bedroom, he could see "anyone walking down the hall and entering the room where [the child] slept." He testified that the child was not in his house from 16 June 1991 until the end of July 1991. Defendant's mother testified that defendant "was not there during that time that much" and that the child was "just a happy little girl." Defendant's sister testified that the child did not appear to have any fear of defendant. She also testified that she (defendant's sister) slept in the room next to the child's bedroom.

Scott White, defendant's employer during the summer of 1991, testified that defendant worked six days per week and did not act sick during that time. Mr. White testified that he had known defendant from "the third grade to the 12th grade and graduated with him." Soon after defendant learned of the allegations against him, Mr. White recommended that defendant see a doctor. Mr.

White took defendant to the Lincoln County Department of Social Services with the doctor's report.

Defendant testified that he was never alone with the child during the summer of 1991 and that he has never had a venereal disease. Dorothy Frye, a nurse, testified that defendant tested negative for venereal disease in October 1991. From the verdict and judgments entered, defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Diane G. Miller, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward three assignments of error. Assignments of error not brought forward on appeal (Nos. 1, 2, 3, 4, and 5) are deemed abandoned. N.C.R. App. P. 28(b)(5). After a careful review of the briefs, transcript, and record, we conclude that defendant received a fair trial, free from prejudicial error.

I.

[1]   In his sixth assignment of error, defendant contends that "[t]he trial court erred in excluding testimony of a pertinent trait of defendant's character. Defendant's employer, Scott White, would have testified that [he told a social worker] 'I did not think Chris [defendant] could do anything like this.' . . . Defendant is entitled to a new trial because he was not allowed to present evidence that he is not the kind of person to commit the crime for which he was being tried." We conclude that defendant is not entitled to a new trial.

Defendant contends that this statement infers "law abidingness" and that it was defendant's option to put his own character at issue. On the other hand, the State contends that the statement "was not evidence of a pertinent trait of defendant's character, but was simply White's opinion as to whether defendant was guilty of the alleged crimes." In his reply brief, defendant responds to the State's argument as follows:

[T]he testimony was not about what the witness thought the defendant actually did, but about what he had the *disposi-*

*tion* to do. The witness' knowledge of the defendant's disposition would have been helpful to the jury. After all, the witness had known the defendant since high school.

Second, the testimony was not about whether the defendant did a particular act, but about whether he had the disposition to do acts *like* this. Such testimony is routinely admitted where it tends to show that the defendant has a tendency to molest children. It should be equally admissible where it tends to show the reverse.

(Emphasis in original.) Recognizing that such testimony is routinely admitted when introduced by the State to show a defendant's tendency to molest a child and assuming, without deciding, that the statement was sufficient to bring defendant's character into issue and therefore admissible, we find no prejudicial error here.

At this point we note that the State and defendant disagree as to the which standard of prejudicial error under G.S. 15A-1443 applies. The State argues that the nonconstitutional standard for prejudicial error applies. G.S. 15A-1443(a) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant"). Defendant argues, citing *Michelson v. United States*, 335 U.S. 469, 93 L.Ed. 168 (1948), that there is a federal constitutional right to put one's character at issue and that the constitutional standard for prejudicial error applies. G.S. 15A-1443(b) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless"). However, our Supreme Court in *State v. Squire*, 321 N.C. 541, 549, 364 S.E.2d 354, 359 (1988) (homicide case) used the nonconstitutional standard of prejudicial error, G.S. 15A-1443(a), when the trial court erred in precluding defendant from introducing the testimony of a witness regarding defendant's character traits. Accordingly, we apply the nonconstitutional standard of prejudicial error here. G.S. 15A-1443(a).

The State argues that even if the exclusion of Mr. White's statement was error, it was harmless error. As noted *supra*, we

assume *arguendo* that the trial court erred by excluding the statement. Defendant argues that the exclusion of the statement was highly prejudicial because "[t]he case was made closer by the evidence that there were other men who had access to [the child], other men she called 'daddy,' men who, unlike defendant, were in the good graces of her mother and grandmother" and points to the existence of a custody dispute between defendant's parents and the child's mother's parents.

We are not persuaded by defendant's argument and we conclude that defendant has failed to meet his burden under G.S. 15A-1443(a). In his brief, defendant concedes that at trial "[i]t was beyond dispute that [the child] had sexual contact with someone, owing to the presence of a sexually transmitted disease." The evidence at trial overwhelmingly indicated that the sexual contact was by defendant despite defendant's evidence that he tested negative for any sexually transmitted disease approximately two months after the child was tested. Here, the child's copiously detailed testimony was consistent with what she told every person with whom she spoke about the instances of abuse. We particularly note that on several occasions at trial the State was quite deliberate in having the child specify the person who sexually abused her. For example, the child testified that the doctor examined her "private" and asked her if anyone had been bothering her. The child testified that she responded to the doctor's question by answering "my daddy." The State then asked the child "[a]nd when you say your daddy, you are talking about Chris Ramseur, Mr. Brice, or Mr. Gillespie?" The child answered "Chris" and the State confirmed this answer by asking the child if "Chris" was the man seated in the courtroom. The child responded "yes." Furthermore, at the end of direct examination, the child testified as follows:

Q: And had anybody else that you know of done the same thing to you that your daddy did?

A: No sir.

Q: Did Roger Brice ever do anything like that to you?

A: No.

Q: Did Mr. Gillespie ever do anything like that to you?

A: No.

Additionally, we note that Ms. Ross of the Lincoln County Department of Social Services testified that "from the very first day I talked to her" the child personally identified her father, Mr. Ramseur (defendant), as the person who committed the acts of sexual abuse. Based on the specificity of the child's testimony and the other evidence in the record, we find no merit in defendant's argument. Accordingly, we conclude that there is not a reasonable likelihood that the admission of Mr. White's statement would have produced a different result at trial. G.S. 15A-1443(a).

Finally, even assuming *arguendo* the applicability of the constitutional standard of prejudicial error, G.S. 15A-1443(b), we conclude after careful scrutiny of all the evidence that any error here was harmless beyond a reasonable doubt. Accordingly, this assignment of error fails.

## II.

[2] In his seventh assignment of error, defendant argues that "[t]he trial court erred in not instructing the jury on taking indecent liberties with a minor." We disagree.

Our Supreme Court has repeatedly held that taking indecent liberties with a minor is not a lesser included offense of first degree sexual offense. *State v. Williams*, 303 N.C. 507, 514, 279 S.E.2d 592, 596 (1981); *State v. Ludlum*, 303 N.C. 666, 674, 281 S.E.2d 159, 164 (1981). *See also State v. Weaver*, 306 N.C. 629, 295 S.E.2d 375 (1982). Defendant argues that "[n]onetheless . . . the legislature intended indecent liberties to be a lesser included offense of both crimes [rape or sexual offense]." Based on the precedent established by *Williams and Ludlum*, we find no error.

## III.

[3] In his eighth assignment of error, defendant argues that "[t]he sentence in this case constitutes cruel or unusual punishment in violation of defendant's state and federal constitutional rights." We disagree.

Defendant's argument was not raised before the trial court. "[I]t is well-established that appellate courts ordinarily will not pass upon a constitutional question unless it was raised and passed upon in the court below." *State v. Degree*, 322 N.C. 302, 309, 367 S.E.2d 679, 684 (1988) (citations omitted). Accordingly, we do not pass upon the question. However, we note that a life sentence

rendered upon a conviction of first degree sexual offense has been upheld as constitutional. *State v. Higginbottom*, 312 N.C. 760, 763-64, 324 S.E.2d 834, 837 (1985) ("Clearly the legislature determined that whether or not accompanied by violence or force, acts of a sexual nature when performed upon a child are sufficiently serious to warrant the punishment mandated for Class B Felonies. Since it is the function of the legislature and not the judiciary to determine the extent of punishment to be imposed, we accord substantial deference to the wisdom of that body"). *See also State v. Cooke*, 318 N.C. 674, 351 S.E.2d 290 (1987); *Degree*, 322 N.C. 302, 367 S.E.2d 679. We find no error.

For the reasons stated, we conclude that the defendant received a fair trial, free from prejudicial error.

No error.

Judges ORR and GREENE concur.