**STATE v. TATUM-WADE**

[229 N.C. App. 83 (2013)]

STATE OF NORTH CAROLINA
v.
GLORIA TATUM-WADE, Defendant

No. COA12-1568

Filed 20 August 2013

1. **Evidence—opinion testimony—character evidence—trusting nature—tax evasion—pertinent trait—no prejudice**

   The trial court erred in a tax evasion case by excluding opinion testimony of defendant's friend and colleague regarding defendant's trusting nature where defendant's allegedly trusting nature was pertinent to the issue of willfulness under N.C.G.S. § 105-236(a)(7). However, defendant failed to demonstrate that a reasonable possibility existed that, absent the trial court's error, a different result would have been reached at trial.

2. **Evidence—testimony—inflammatory anti-tax cult—no plain error**

   The trial court did not commit plain error in a tax evasion case by admitting inflammatory anti-tax cult evidence through the testimony of several of the State's witnesses. Even assuming *arguendo* that the challenged evidence should not have been admitted, the error did not reach the level of plain error.

Appeal by defendant from judgments entered 24 February 2012 by Judge Michael J. O'Foghludha in Wake County Superior Court. Heard in the Court of Appeals 6 May 2013.

*Roy Cooper, Attorney General, by Ryan F. Haigh, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for defendant-appellant.*

DAVIS, Judge.

Gloria Tatum-Wade ("defendant") appeals her convictions for seven counts of attempting to evade or defeat the imposition or payment of North Carolina's individual income tax. After careful review, we find no prejudicial error.

STATE v. TATUM-WADE

[229 N.C. App. 83 (2013)]

## Factual Background

The State presented evidence at trial tending to establish the following facts: Prior to 1995, defendant filed federal and North Carolina income tax returns for 27 years. Beginning in 1995, defendant and her (now late) husband, William Wade ("Wade"), started attending conventions put on by the organizations "We, the People" and "Sovereign Citizens Patriot." At one of these conventions, it was represented to Wade and defendant that they could obtain an exemption from paying income tax by completing a set of documents labeled "Form 1776 Codicil" and filing them with the Internal Revenue Service ("IRS"). They purchased the packet of materials, completed the Form 1776 Codicil, and mailed a copy of it to the IRS. They also registered a copy with the Guilford County Register of Deeds.

In January 2003, defendant began a new job teaching at a public high school in Guilford County. As part of the hiring process, defendant completed an NC-4 Employee Withholding Allowance Certificate. Defendant wrote on the form that she was "exempt" from having North Carolina income tax withheld from her pay. No taxes were withheld from defendant's wages for the years 2003 through 2010.

On 18 June 2010, the North Carolina Department of Revenue ("DOR") sent defendant a letter indicating that her taxes were delinquent. Defendant responded with a letter stating that in 1995 she had submitted the Form 1776 Codicil to the IRS and, three months later, received a letter indicating that she was "free from paying taxes to the federal government." Defendant further explained that while she had recently moved and could not find a copy of her letter from the IRS purporting to show her tax-exempt status, she did have a copy of the Form 1776 Codicil. Defendant included a copy of that document with her letter to DOR.

On 2 May 2011, defendant was interviewed by DOR Special Agents Charles Nische, Jr. ("Special Agent Nische") and Nancy Yokley ("Special Agent Yokley"). During the conversation, defendant told the agents that she had not paid state income tax since 1995. She also identified herself as being a member of the organizations "Sovereign Citizens Patriot" and "We, the People." Defendant told Special Agents Nische and Yokley that she had gone to several of those organizations' meetings and had watched some of their internet-based presentations. When the agents asked defendant about the Form 1776 Codicil, she explained that it was her "application" for obtaining tax-exempt status.

Defendant was subsequently charged with seven counts of tax evasion under N.C. Gen. Stat. § 105-236(a)(7) for the tax years 2004 through

**STATE v. TATUM-WADE**

[229 N.C. App. 83 (2013)]

2010. Defendant pled not guilty and the case proceeded to trial. At the close of the State's evidence, defendant moved to dismiss the charges for insufficient evidence, and the motion was denied.

Defendant testified on her own behalf. She stated that in 1995, she and Wade attended several conventions put on by the organizations "We, the People" and "Sovereign Citizens Patriot." At one such meeting, various speakers introduced themselves as attorneys, accountants, or former IRS employees and indicated that they could help people apply for an exemption from having to pay individual income tax. Defendant and Wade were told that the exemption was "legal" and that if their applications were accepted, they would no longer have to pay income tax. Defendant testified that she trusted this advice, purchased the packet including the Form 1776 Codicil, and completed the application process.

According to defendant's testimony, approximately three months after she submitted the Form 1776 Codicil to the IRS, she received a letter on IRS letterhead stating that it had reviewed her application and determined that she was no longer required to pay income tax. Based on this letter, defendant stopped having income tax withheld from her pay. After being contacted by DOR, defendant hired a tax service to determine whether she had a "problem." Defendant eventually learned that the "exemption" was not legal and had the tax service prepare and file tax returns for her that encompassed the tax years 2006 through 2010.

At trial, defendant also called several character witnesses who testified that she was an honest, truthful, and law-abiding person. At the close of all the evidence, defendant renewed her motion to dismiss the charges against her. The trial court denied the motion.

The jury found defendant guilty on all seven counts of tax evasion. The trial court sentenced defendant to a presumptive-range term of six to eight months imprisonment for one count, consolidated the remaining six counts into one judgment, and imposed a second, consecutive term of six to eight months imprisonment. The court then suspended the sentences, placed defendant on supervised probation for 36 months, and ordered her to pay a $1,500 fine and $8,754 in restitution. Defendant appealed to this Court.

## Analysis

### I. Character Evidence of Defendant's Trusting Nature

[1] Defendant's primary argument on appeal is that the trial court erred in excluding opinion testimony by Dr. Yardley Hunter ("Dr. Hunter"), one of defendant's friends and colleagues, regarding defendant's trusting

nature. Although we agree that the trial court's exclusion of this testimony constituted error, we conclude that it was not prejudicial error.

### A. Exclusion of Opinion Testimony

On direct examination, Dr. Hunter testified that she had worked closely with defendant at the high school at which they both taught and that she was also defendant's friend outside of work. Dr. Hunter was permitted to testify that, in her opinion, defendant was a truthful, honest, and law-abiding citizen.

At the end of Dr. Hunter's testimony before the jury, following an unrecorded bench conference, defense counsel requested a *voir dire* examination of Dr. Hunter. During the *voir dire*, defense counsel asked her whether she had an "opinion about [defendant's] character trait for her being a trusting person of others, in general, versus a skeptical person of others[.]" Dr. Hunter responded, in pertinent part, as follows: "[Defendant] trusts people without challenging them. She's open to them. She believes in people. She believes in what they say. She's not gullible." After considering Dr. Hunter's *voir dire* testimony, the trial court excluded the evidence, citing Rules 401 and 403 of the North Carolina Rules of Evidence.

Defendant contends that Dr. Hunter's testimony was admissible under Rule 404(a), which provides, in relevant part, as follows:

> (a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
>> (1) *Character of accused.*—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.]

N.C. R. Evid. 404(a)(1).

Our Supreme Court has held that "Rule 404(a) is a general rule of exclusion, prohibiting the introduction of character evidence to prove that a person acted in conformity with that evidence of character." *State v. Bogle*, 324 N.C. 190, 201, 376 S.E.2d 745, 751 (1989). However, as an exception to this general rule of exclusion, Rule 404(a)(1) "permits the accused to offer evidence of a 'pertinent trait of his character' as circumstantial proof of his innocence." *Id.* (quoting N.C. R. Evid. 404(a)(1)).

The Supreme Court has further explained that "'pertinent' in the context of Rule 404(a)(1) is tantamount to relevant." *State v. Squire*, 321

N.C. 541, 547, 364 S.E.2d 354, 358 (1988). Thus, the key determination concerning admissibility under Rule 404(a)(1) is whether the evidence of the trait "would 'make the existence of any fact that is of consequence to the determination of the action' more or less probable than it would be without evidence of the trait." *Id.* at 548, 364 S.E.2d at 358 (quoting N.C. R. Evid. 401). *See also Bogle*, 324 N.C. at 201, 376 S.E.2d at 751 ("[I]n order to be admissible as a 'pertinent' trait of character, the trait must *bear a special relationship to or be involved in* the crime charged.") (emphasis in original).

Relevance is a question of law, and, as such, the admissibility of evidence under Rule 404(a)(1) is reviewed *de novo. See State v. Houseright*, __ N.C. App. __, __, 725 S.E.2d 445, 448 (2012) (holding that "questions of relevance" are "reviewed *de novo*"); *see also United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992) (conducting *de novo* review of whether "district court improperly excluded testimony from two character witnesses").

Defendant was charged with violating N.C. Gen. Stat. § 105-236(a) (7), which makes it unlawful for any person to "*willfully* attempt[] . . . in any manner to evade or defeat a tax or its payment . . . ." N.C. Gen. Stat. § 105-236(a)(7) (2011) (emphasis added). In the context of tax offenses, the term "willfulness" means "to purposely commit an offense in violation of a known legal duty." *State v. Howell*, 191 N.C. App. 349, 354, 662 S.E.2d 922, 926 (2008); *accord Cheek v. United States*, 498 U.S. 192, 201, 112 L.Ed.2d 617, 630 (1991) ("Willfulness, . . . in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.").

Defendant contends that her character trait of being trusting of others was pertinent to whether she *willfully* attempted to evade paying taxes. The crux of her defense, she argues, was that she believed the representations made to her by the sellers of the Form 1776 Codicil that the purported tax exemption was legal and thus she had a good faith – albeit mistaken – belief that she was exempt from having to pay state income tax. As such, she contends that the trial court erred in excluding Dr. Hunter's testimony regarding this character trait.

Although neither party cites to any North Carolina appellate decision addressing whether a defendant's trusting nature may be a trait pertinent to the crime charged, defendant does direct our attention to *United States v. Elliott*, 23 M.J. 1 (C.M.A. 1986), in which the United

States Court of Military Appeals addressed this precise issue.[1] In *Elliott*, the defendant, a member of the United States Air Force, was charged with stealing two government-owned televisions. *Id.* at 2. During the criminal investigation, the defendant maintained that the televisions had been given to him as a gift by another servicemember that defendant had recently met and who could not be located. *Id.* During the court-martial proceeding, defense counsel attempted to introduce evidence through character witnesses that "[the defendant] is a trusting person, that he trusts other people in general." *Id.* at 3. The military judge excluded the evidence, and the defendant appealed his convictions. *Id.* at 4.

On appeal, the court concluded

> that the accused's trusting nature as to other people was "pertinent" in th[e] case. The defense theory at trial was that another person, who may or may not himself have stolen the TVs, gave the accused both sets and that the accused had no reason to believe that they were not then his own. Contrariwise, the prosecution's theory was that [the accused] had stolen both television sets himself, had sold one, and had kept the other. With the case in this posture, it could fully be expected that the [jurors] would ask themselves, in weighing the accused's story, "What kind of person would innocently accept two working television sets as gifts from someone he had only recently met – is that really believable?" In other words, the reasonableness of the accused's story obviously was squarely in issue; and equally obviously, the accused's trusting nature of other people – that is, taking them and what they say and do at face value – was directed to this issue in dispute and legitimately tended to prove the defense version of how [the accused] had come into possession of the television sets.

*Id.* at 5-6.

Similarly, here, defendant openly admitted to not paying individual income tax when questioned by Special Agents Nische and Yokley about her delinquent tax status. Defendant maintained throughout the investigation that she believed she was not required to pay income tax because, by filing the Form 1776 Codicil with the IRS, she had "take[n] advantage

---

1. Where, as here, the controlling North Carolina Rule of Evidence is similar or identical to its counterpart in the Federal Rules of Evidence, our courts have looked to federal decisions for guidance. *Crawford v. Fayez*, 112 N.C. App. 328, 333, 435 S.E.2d 545, 548 (1993), *disc. review denied*, 335 N.C. 553, 441 S.E.2d 113 (1994); N.C. R. Evid. 102 cmt.

of [an] exception in the law[.]" In contrast, the State's theory of the case was that defendant was a "tax protestor," and that "her statements, her filings, every action that she's ever taken are of a tax protestor . . . ."

Given these opposing theories of the case, defendant's allegedly trusting nature was pertinent to the issue of willfulness under § 105-236(a)(7). *See Commonwealth v. Bonds*, 445 Mass. 821, 830 n.13, 840 N.E.2d 939, 947 n.13 (Mass. 2006) (noting that evidence of "the 'trusting nature' of a person" would constitute "character evidence"). As such, we conclude that Dr. Hunter's excluded opinion testimony on this subject was admissible under Rule 404(a)(1). *See Bogle*, 324 N.C. at 199, 376 S.E.2d at 749 (holding that "character trait of law-abidingness" was pertinent in trafficking prosecution). The trial court, therefore, erred by excluding this portion of Dr. Hunter's testimony on relevancy grounds.

The trial court also excluded Dr. Hunter's opinion testimony under Rule 403 due to its "cumulative" nature. Rule 403 "provides that evidence, although relevant, 'may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *State v. Barton*, 335 N.C. 696, 704-05, 441 S.E.2d 295, 299 (1994) (quoting N.C. R. Evid. 403). A trial court's ruling under Rule 403 is reviewed for abuse of discretion. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). Under this standard, a trial court's ruling may not be overturned on appeal unless the ruling is "manifestly unsupported by reason" or is "so arbitrary that it could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (citation and quotation marks omitted), *cert. denied*, 552 U.S. 1319, 170 L.Ed.2d 760 (2008).

Here, the trial court considered the evidence of defendant's trusting nature to be cumulative because defendant, through the testimony of Dr. Hunter and other witnesses, had already presented evidence of "[defendant] loving and trusting her husband . . . and [of the fact] that she loved her family, and the family was first." The trial court's articulation of its rationale for excluding the evidence suggests that it misunderstood the purpose for which defendant sought to offer Dr. Hunter's opinion testimony regarding her character trait for trusting others. The evidence of defendant's trusting nature was not offered to show that she trusted her husband or that she valued her familial relationships but, rather, to show that defendant was trusting of individuals whom she did not know – "taking them and what they say and do at face value . . . ." *Elliott*, 23 M.J. at 6.

Our review of the trial transcript reveals that Dr. Hunter's proffered testimony would have been the *only* evidence regarding defendant's character trait for being trusting of others. We therefore conclude that the trial court abused its discretion in excluding the evidence as being cumulative under Rule 403.

### B. Harmless Error

Although we conclude that the trial court erred in excluding Dr. Hunter's testimony, defendant must nevertheless demonstrate that she was prejudiced by the exclusion of the evidence in order to receive a new trial as a result of the trial court's error. N.C. Gen. Stat. § 15A-1443(a) (2011). "To establish prejudice based on evidentiary rulings, [the] defendant bears the burden of showing that a reasonable possibility exists that, absent the error, a different result would have been reached." *State v. Lynch*, 340 N.C. 435, 458, 459 S.E.2d 679, 689 (1995), *cert. denied*, 517 U.S. 1143, 134 L.Ed.2d 558 (1996).

In attempting to demonstrate prejudice, defendant, once again, relies on *Elliott*. In addressing the issue of prejudice resulting from the exclusion of the evidence of the defendant's trusting nature in *Elliott*, the Court of Military Appeals observed that although the defendant had been allowed to testify as to his version of how he came into possession of the missing television sets, the government "throughout the trial made a consistent and sometimes strident effort to disparage the likely credibility of [the defendant's] explanation." *Elliott*, 23 M.J. at 8.

Against these attacks, the court noted that the defendant

> had no more with which to defend himself than his own credibility, manifested by his demeanor on the stand, and testimony that he was an honest person. It cannot be doubted that the believability of [the accused]'s story explaining his possession of the stolen property would have been enhanced if the [trial] judge had not erroneously excluded all this evidence that he is a trusting person who takes others and their actions at face value without questioning motives when other people might do so[.]

*Id.* at 8-9. Consequently, the court concluded that "[t]he existence of prejudice [was] clear." *Id.* at 9.

Analogizing to *Elliott*, defendant contends that "the State went to some lengths to disparage [her] testimony," attack her credibility, and undermine the "believability of her account . . . ." Unlike in *Elliott*,

however, the jury in the present case was not limited to assessing the believability of defendant's story based solely on her own testimony. To the contrary, the jury heard from several witnesses – besides defendant herself – whose testimony bore directly on her state of mind – that · is, whether she genuinely believed that she was exempt from paying income tax.

First, Norma Matto ("Matto"), a mortgage loan originator, testified on defendant's behalf. Matto testified that she had met with defendant about obtaining a loan to purchase a new home. During the qualification process, Matto told defendant that she would need copies of defendant's tax returns to determine her eligibility. In response, defendant told Matto that she believed, based on a letter she had received from the IRS, that she was exempt from having to file income tax returns and, for this reason, she did not have any returns to give Matto. Matto further testified that (1) defendant was "open and confident in [her] belief" that "she was exempt from paying taxes"; and (2) nothing about defendant's demeanor suggested that she was "being evasive in any way[.]"

Similarly, Ruthmarie Mitchell ("Mitchell"), an assistant principal at the school at which defendant taught, also testified as a character witness for defendant. After testifying that, in her opinion, defendant was an honest, truthful, and law-abiding person, Mitchell was asked on cross-examination whether there was anything that would change her opinion about defendant's character. In response, the following exchange occurred:

A. Not of Ms. Wade's character. No.

Q. If I told you that she's evaded taxes for more than 15 years, that wouldn't change your mind?

A. *Considering she thought she was exempt, no.*

Q. The fact that she's never filed a return in 15 years, would not change your mind that she's a law-abiding citizen?

A. It would not change my mind, because Ms. Wade was exempt. *In her mind, she was exempt.*

(Emphasis added.)

Finally, on cross-examination, Dr. Hunter was asked by the prosecutor whether – as a former member of the military and current public school teacher whose salary was paid from tax revenue – she was "bother[ed]" by defendant's failure to pay individual income tax. Dr.

Hunter responded as follows: "If she consciously violated a right of responsibility, then it would bother me. However, *I don't believe she consciously violated her right of responsibility.*" (Emphasis added.)

We believe that this testimony by Matto, Mitchell, and Dr. Hunter arguably had greater probative force regarding defendant's state of mind – and, therefore, the issue of willfulness – than the excluded testimony would have had. The gist of these witnesses' testimony was that defendant openly, honestly, and in good faith believed, based on what she had been told by others, that she was exempt from paying taxes. As defendant asserts in her brief, "the central issue in this case" was whether "she w[as] . . . taken in by the scheme she described and honestly believed she was not violating the law." This state of mind evidence bore directly on this issue and was sufficient to enable the jury to consider her defense that she had not willfully violated the law.

Moreover, we note that while Dr. Hunter did testify that, in her opinion, defendant was a "trusting person," she qualified that opinion by emphasizing that defendant was "not gullible." Thus, had the trial court allowed the jury to hear Dr. Hunter's opinion testimony regarding defendant's trusting nature, it also would have heard evidence that defendant was not "gullible." Such testimony could have had the effect of diminishing, rather than enhancing, her defense.

For these reasons, we conclude that defendant has failed to demonstrate that a reasonable possibility exists that, absent the trial court's error, a different result would have been reached at trial. *See State v. Powell*, 340 N.C. 674, 692, 459 S.E.2d 219, 228 (1995) (holding that defendant was not prejudiced by erroneous exclusion of character evidence in light of "all of the other evidence" presented at trial), *cert. denied*, 516 U.S. 1060, 133 L.Ed.2d 688 (1996).

## II. "Tax Protestor" Evidence

[2] Defendant also contends that the trial court erred in admitting "inflammatory anti-tax cult evidence" through the testimony of several of the State's witnesses. The first witness, Jeff Thigpen ("Thigpen"), the Guilford County Register of Deeds, testified that defendant filed copies of the Form 1776 Codicil with his office and that it resembled other filings by members of "tax protestor" groups known as "sovereign citizen" groups. Thigpen then stated, without objection from defendant, that he had heard that such groups in the Southwest had been involved in (1) the death of several law enforcement officers; (2) bringing lawsuits against judges; and (3) obtaining liens against the property of law enforcement officers.

Stephanie Gray, the DOR supervisor who manages the unit respon-sible for investigating tax protestor groups, testified – once again, with-out any objection from defendant – that she was familiar with sovereign citizen groups and that she understood such groups to be "very anti-tax and that they can be aggressive, even dangerous, in nature."

The last witness, Special Agent Yokley, testified that when she first interviewed defendant, defendant indicated that she was a member of the "American Patriot" and "We, The People" organizations and that she had participated in some of the groups' activities. Without objection, Special Agent Yokley then stated that these groups were involved in the tax protest movement and that they are "anti-government in general."

Defendant asserts that this evidence was not relevant to any issue at trial and that it served no purpose other than to portray her as a danger-ous, anti-government "tax protestor." Because – as defendant acknowl-edges – she failed to object to the admission of the above-referenced testimony at trial, we review its admission only for plain error. N.C. R. App. P. 10(a)(4). As our Supreme Court has recently emphasized, under plain error review, the defendant bears the burden of establishing preju-dice resulting from a "fundamental error" – one that, based on an "exam-ination of the entire record," had a "probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation and quotation marks omitted).

Defendant contends that this evidence of the "violent" and "anti-government" nature of tax protestor organizations was not relevant to any element of the charges against her and that the "repeated associa-tion" of her with these groups amounted to inflammatory and prejudicial character evidence. Even assuming *arguendo* that the challenged evi-dence should not have been admitted, we do not believe that any such error reached the level of plain error. On redirect examination, Thigpen clarified that he had no reason to believe that defendant was actually involved in or associated with any of the violent or anti-government conduct of the tax protestor groups referenced earlier in his testimony. Moreover, on recross examination, Thigpen answered in the negative when asked: "Do you have any knowledge whether that group you're talking about, the [S]outhwest thing, is this same group [with which defendant is associated]?"

We conclude that the clarifying testimony as to the absence of evi-dence that defendant had participated in, or been affiliated with, the vio-lent, anti-government activities of certain tax protestor groups mitigated any prejudicial impact of the challenged testimony. *See United States*

*v. Grosshans*, 821 F.2d 1247, 1253 (6th Cir.) (holding that admission of allegedly prejudicial tax protestor evidence in tax evasion prosecution did not constitute plain error under equivalent federal rule), *cert. denied*, 484 U.S. 987, 98 L.Ed.2d 505 (1987). Thus, even assuming *arguendo* that this evidence was erroneously admitted, defendant has failed to show plain error.

### III. Jury Instructions

Finally, defendant argues that the trial court erroneously instructed the jury regarding the element of willfulness under § 105-236(a)(7). Specifically, she asserts that "[t]he trial court erred by denying [her] requested jury instruction defining 'good faith' and instructing the jury . . . that certain beliefs were not objectively reasonable and had no support in the law."

We need not address these contentions, however, because even if we assume – without deciding – that the trial court's instructions were erroneous, we conclude that defendant has failed to establish prejudice on appeal.[2] "[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen. Stat. § 15A–1443(a)). It is the defendant's burden to establish the existence of such prejudice on appeal. *State v. Easterling*, 300 N.C. 594, 609, 268 S.E.2d 800, 809 (1980).

Defendant's entire argument with respect to prejudice on this issue consists of her bare assertion that "[a] new trial is required" because "[t]here is a reasonable possibility that the jury would have reached a different verdict" had the trial court not committed the alleged instructional errors. Such a conclusory, unsubstantiated claim is insufficient to demonstrate prejudice warranting a new trial. *See State v. Bailey*, 280 N.C. 264, 269, 185 S.E.2d 683, 687 ("It suffices to say that [a] defendant's bare assertion of prejudice is not self-sustaining."), *cert. denied*, 409 U.S.

---

2. In her reply brief to this Court, defendant asserts that the trial court's instructional errors are "reversible *per se*" because the instructions were not supported by the evidence presented at trial. Defendant is correct that "[a] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence." *State v. Sweat*, 366 N.C. 79, 89, 727 S.E.2d 691, 698 (2012). It is well established, however, that only " '[w]hen such instructions are *prejudicial* to the accused' " is she " 'entitled to a new trial.' " *Id.* (quoting *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973)) (emphasis added).

948, 34 L.Ed.2d 218 (1972); *State v. Barron*, 202 N.C. App. 686, 695, 690 S.E.2d 22, 29 (holding that defendant "failed to carry his burden of proof to show he was prejudiced" by assumed instructional error where defendant "never addresse[d] the effect of the error on the jury's verdict") (citation and quotation marks omitted), *disc. review denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). Thus, without any particularized argument showing how she was prejudiced by the challenged instructions, defendant has failed to demonstrate that she is entitled to a new trial.

## Conclusion

For the reasons stated above, we find no prejudicial error.

NO PREJUDICIAL ERROR.

Chief Judge MARTIN and Judge BRYANT concur.