BRATVOLD, Judge
Appellant challenges his convictions of violating a domestic-abuse no-contact order (DANCO) under Minn. Stat. § 629.75, subd. 2(d)(1) (2016). Appellant argues that the district court committed "reversible error when it ... allow[ed] the State to present testimonial hearsay statements by a non-testifying witness under the forfeiture-by-wrongdoing exception to the confrontation clause," because the state failed to establish that appellant "caused, or acquiesced to another causing, the witness to be unavailable to testify." Appellant also raises several issues in his pro se supplemental brief.
We conclude that the district court did not clearly err in determining that appellant procured the witness's unavailability at trial and, therefore, that the forfeiture-by-wrongdoing exception applied in his case. We also conclude that the issues raised in appellant's pro se brief lack merit. Accordingly, we affirm.
FACTS
Appellant Ronnie Bila Shaka and S.S. married in October 2015, and have one child together. A Dakota County district court issued a criminal DANCO against Shaka, prohibiting him from contacting S.S. "directly, indirectly or through others, in person, by telephone, in writing, electronically, or by any other means." Shaka was served with the DANCO on December 2, 2016, and the DANCO was effective for one year.
In March 2017, the state charged Shaka with being a prohibited person in possession of a firearm and violating the DANCO in file number 27-CR-17-7866. While awaiting trial, Shaka was detained at the Hennepin County Public Safety Facility (jail). Persons detained at the jail are assigned a *765 "personal identification number" (PIN) when they are booked into jail, and must use that PIN "to identify themselves when they're making a phone call." The jail informs detainees that phone calls will be recorded and retained.
During his detention, Shaka made numerous calls to a phone number that belonged to S.S., and the jail recorded each call. Shaka's PIN was used for each of the calls. Detective Bergin, of the Hennepin County Sheriff's Office, investigated the calls, and determined that Shaka was speaking to S.S., based in part on the content of the discussions, which involved "S.S.'s pregnancy and their marriage." In October 2017, the state charged Shaka, in a second complaint, with four counts of violating the DANCO, based on four jail phone calls recorded in April, May, and June 2017.[1]
This appeal arises from the jury trial on the second complaint. On the second day of trial, Bergin testified to the facts described above. Also during Bergin's testimony, the state played recordings of the four jail phone calls. After Bergin testified, and outside the presence of the jury, the state informed the district court, the defendant, and defense counsel that S.S. had not appeared pursuant to the state's subpoena to testify. The state also informed the court that, after jury selection ended on the first day of trial, the jail recorded additional phone calls by Shaka, who "spent the evening finding people to seek out [S.S.] and make sure she didn't come to court." The state sought a brief continuance of the trial, or in the alternative, asked the district court to apply the "forfeiture-by-wrongdoing" exception to the Confrontation Clause, and permit Bergin to testify that he had interviewed S.S. on the first day of trial and she confirmed that she was the female voice on the recordings that had been received into evidence. The district court granted a continuance until the next morning and issued a bench warrant for S.S. to appear.
On the third day of trial, S.S. did not appear to testify and the state informed the district court that police had been unable to locate S.S. The state briefly summarized its efforts to contact S.S., and then moved to allow Bergin to testify regarding S.S.'s statements. The state also provided the court and defense counsel with transcripts of Shaka's phone calls after the first day of trial. Shaka objected and argued that admitting S.S.'s hearsay statements would violate Shaka's "Sixth Amendment right to confront." Shaka's attorney stated that S.S. called him after the first day of trial and told him that she would be in court to testify the next day.
The district court analyzed the evidentiary issue under Minn. R. Evid. 804(b)(6) and determined that S.S. was unavailable. The district court stated that it had listened to the recordings of the jail phone calls that Shaka made after the first day of trial. The district court found that Shaka made the calls to "keep [S.S.] out of this courtroom." The district court also found that Shaka provided his family members, and specifically his father, with S.S.'s home address and phone number and "urged" his father "to go to her house in St. Paul and get her to not come to trial." Additionally, the district court found that Shaka's father agreed to go to S.S.'s home and prevent her from testifying. The district court concluded that Shaka had "caused or acquiesced to cause through his wrongdoing *766 her to not appear to testify" and, therefore, that Shaka had "waived his right to confrontation regarding her statements." The district court granted the state's motion and ruled that Bergin could testify about his conversation with S.S.
After the district court's ruling, Bergin testified that S.S. had come to his office as directed by the subpoena to prepare for her trial testimony. He also testified that, during this meeting, he played two of the jail phone call recordings from May 4 and May 10, 2017, and S.S. confirmed that it was her voice on the calls. Bergin testified that he identified the same female voice on the other two recordings.
After the state rested, Shaka testified in his defense and admitted that he was the male voice on the recorded calls. Shaka asserted, however, that the female voice on the calls was not S.S. but another woman. The jury found Shaka guilty on all four counts of violating the DANCO. The district court committed Shaka to the commissioner of corrections for 39 months. Shaka appeals.
ISSUES
I. Did the district court err by applying the forfeiture-by-wrongdoing exception to admit S.S.'s out-of-court testimony?
II. Do Shaka's pro se arguments have merit?
ANALYSIS
I. The district court did not err by applying the forfeiture-by-wrongdoing exception to permit S.S.'s out-of-court statements to be admitted as substantive evidence because Shaka procured S.S.'s unavailability.
On appeal, Shaka argues that the district court violated his "constitutional right to confrontation by allowing the state to present testimonial hearsay statements at [his] trial." Specifically, Shaka contends that the state failed to establish that he "caused, or acquiesced to anyone else causing," S.S.'s unavailability at trial. Shaka asks this court to reverse his convictions and remand for a new trial. The state argues that the district court "properly exercised its discretion in applying [the forfeiture-by-wrongdoing] exception to admit S.S.'s out-of-court statements" and asks this court to affirm.
When an appellant challenges the admissibility of evidence under the Confrontation Clause, our review is de novo. See State v. Caulfield , 722 N.W.2d 304, 308 (Minn. 2006). A district court's factual findings are upheld unless "clearly erroneous." See State v. Fields , 679 N.W.2d 341, 345 (Minn. 2004) ; see generally State v. Horst , 880 N.W.2d 24, 31 (Minn. 2016) (holding an appellate court reviews factual findings for clear error and legal conclusions de novo when reviewing a district court's decision to deny suppression of defendant's statements to police in the absence of a Miranda warning).[2]
Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, a defendant in a criminal case has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI ; see also Minn. Const. art. I, § 6.[3] The Confrontation Clause prohibits *767 the admission of a witness's out-of-court testimonial statements unless the witness is unavailable and was previously subject to cross-examination by the defendant. Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). While the Supreme Court has recognized the forfeiture-by-wrongdoing exception, it has primarily discussed its rationale and has not articulated its elements. For example, the Supreme Court has held that "[w]hile defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." Davis v. Washington , 547 U.S. 813, 833, 126 S.Ct. 2266, 2280, 165 L.Ed.2d 224 (2006).[4] The Minnesota Supreme Court has embraced the Supreme Court's description of the forfeiture-by-wrongdoing exception as a narrow doctrine that "extinguishes confrontation claims on essentially equitable grounds." State v. Cox , 779 N.W.2d 844, 850 (Minn. 2010) (quoting Crawford , 541 U.S. at 62, 124 S.Ct. at 1370 ).
The Minnesota Supreme Court has held that the forfeiture-by-wrongdoing exception requires the state to prove four elements by a preponderance of the evidence: "(1) that the declarant-witness is unavailable; (2) that the defendant engaged in wrongful conduct; (3) that the wrongful conduct procured the unavailability of the witness; and (4) that the defendant intended to procure the unavailability of the witness." Id. at 851. The exception is codified in Minnesota Rule of Evidence 804(b)(6), which slightly revised the third element to include a party "who wrongfully caused or acquiesced in wrongfully causing the declarant's unavailability as a witness." Minn. R. Evid. 804(b)(6).[5]
Shaka concedes that the district court did not err in determining that three of the four elements in the forfeiture-by-wrongdoing exception apply to the contested hearsay evidence. Shaka does not challenge the district court's determinations that S.S. was unavailable, that he engaged in wrongful conduct, and that he intended to procure S.S.'s unavailability for trial. Shaka argues, however, that the evidence does not support the district court's finding of the third element that he or his family members caused S.S. to be unavailable. Shaka contends that the state did not "present any statements from [S.S.] regarding why she did not appear or information from the people [Shaka] spoke to on the recorded phone calls regarding whether they actually contacted [S.S.] and convinced her to be unavailable." Thus, he argues that the state failed to establish that his wrongful conduct "actually caused" S.S.'s failure to appear for trial.[6]
*768 The district court acknowledged that it did not know why S.S. did not comply with her subpoena and appear to testify on the second or third days of trial. The district court added that it also did not know why S.S. was "not answering her phone or available for St. Paul police to locate and get her here." But the court stated that it was "making a leap and finding that there is causation." In doing so, the district court relied on circumstantial evidence, citing S.S.'s meeting with Bergin on the first day of trial pursuant to a subpoena; S.S.'s phone call to Shaka's attorney to say she would testify the next day; and S.S.'s failure to appear for trial after "Shaka sent his family to tell her not to come and to get her not to come so that he could get out of jail."
Shaka contends that there is no direct evidence that his conduct procured S.S.'s unavailability. He is correct. But the state argues that the district court was permitted to draw inferences from the evidence to determine whether Shaka caused S.S.'s unavailability. To resolve the issue raised by the parties, we first consider the difference between direct and circumstantial evidence and then analyze caselaw from other jurisdictions.[7] The supreme court has defined direct evidence as "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Bernhardt v. State , 684 N.W.2d 465, 477 n.11 (Minn. 2004) (citation omitted). Circumstantial evidence is defined as "evidence based on inference and not on personal knowledge or observation" and "all evidence that is not given by eyewitness testimony." Id. (citation omitted). The supreme court has concluded that "[c]ircumstantial evidence is entitled to the same weight as direct evidence." Id. at 477.[8]
In State v. Maestas , the New Mexico Supreme Court held that causation in the forfeiture-by-wrongdoing exception "need not be established by direct evidence or testimony" because "rarely will a witness who has been persuaded not to testify *769 regarding an underlying crime come forward to testify about the persuasion." 412 P.3d 79, 90-91 (N.M. 2018) ; see also State v. Weathers , 219 N.C.App. 522, 724 S.E.2d 114, 117 (2012) ("It would be nonsensical to require that a witness testify against a defendant in order to establish that the defendant has intimidated the witness into not testifying.")
Likewise, in United States v. Scott , the Seventh Circuit stated that "[i]t seems almost certain that, in a case involving coercion or threats, a witness who refuses to testify at trial will not testify to the actions procuring his or her unavailability." 284 F.3d 758, 764 (7th Cir. 2002). Scott observed that it "would not serve the goal of [Fed. R. Evid.] 804(b)(6) to hold that circumstantial evidence cannot support a finding of coercion." Id. Because Minnesota has recognized that direct and circumstantial evidence carry the same weight, we hold that a district court may draw reasonable inferences from circumstantial evidence in determining whether a defendant's wrongdoing procured the unavailability of a witness.
Here, the record supports the district court's inference that Shaka convinced his family members to cause S.S.'s absence from trial. First, the timing of Shaka's calls to his family supports the district court's conclusion. The district court found that S.S. met with Bergin "in person" on the first day of trial, and told him that she would testify that two of the phone calls were her voice. Shaka's attorney told the court S.S. called him on the first day of trial and stated that she was coming to court to testify the next day. Additionally, the state produced evidence that, starting at 6:04 p.m. on the first day of trial, Shaka made more than one call asking family members to contact S.S. so she would not testify. And, S.S. failed to appear in response to a trial subpoena on the two days after Shaka's phone calls, even though S.S. had previously responded to a subpoena and a bench warrant was issued to compel her appearance.
Second, Shaka's statements and his family's responses during the phone calls support the district court's inference that he procured S.S.'s absence by persuading his family to go to her home and make sure she did not come to court. In one call, Shaka told his father that if "the witness" did not come to court the next day, the charges would "drop." Shaka then gave his father S.S.'s phone number and home address, and told him that "she's gonna send me to the joint" but if "[t]hat person don't come, they won't be no verdict."
In another call about 10 minutes later, Shaka's father stated that someone was "checking" S.S. on Facebook "right now" to find out "why she change[d] her mind." Shaka speculated that she "might be back with baby daddy right now." But his father stated that she was "talking about ... how she's single." Shaka responded, "[s]o it's no me, f--k me sh-t huh?" After which, Shaka told "Pop" to "[s]lide over there."
In the last recorded phone call from around 7:00 p.m., Shaka's family member stated that he had not received a reply from S.S. and he would "put together a posse ... to go over there [to S.S.'s home]." Shaka stated that he needed to "go to the crib ... [and tell her to] stay your dumb a-- at the crib." The family member responded that he was "hookin' it up to go." At the end of the conversation, the family member said that he could not "handle" it until he hung up. Shaka again repeated S.S.'s home address and immediately added that, in 24 hours, "I could be out there having-enjoying myself with my shortys" but "[t]he only way that's gonna happen, is you know how." His family member agreed and said, "I'm with you."
*770 We conclude that the forfeiture-by-wrongdoing exception to the Confrontation Clause applied because circumstantial evidence supported the district court's factual finding that Shaka's calls to his family members caused S.S. to not appear and testify at trial. Therefore, the district court did not violate Shaka's constitutional rights in admitting S.S.'s statements to Bergin.
II. Shaka's pro se arguments are without merit.
In his pro se supplemental brief, Shaka raises three issues: (1) the district court erred in permitting the jury to hear evidence that Shaka was in custody when he violated the DANCO; (2) the prosecution was vindictive in pursuing these charges because Shaka was acquitted of similar charges prosecuted by the same county attorney; and (3) there is insufficient evidence to sustain his conviction. We address each argument in turn.
A. In custody
Shaka argues that the district court erred because it permitted the jury to hear testimony that he was in custody when he made the phone calls to S.S. that violated the DANCO. He argues that this testimony was prejudicial because it could have led "the jury to believe that [he] was guilty or not law abiding because he was in custody on another matter." See State v. Manthey , 711 N.W.2d 498, 506 (Minn. 2006) (explaining that "references to prior incarceration of a defendant can be unfairly prejudicial").
At trial, Shaka did not object to this evidence, which was limited to introducing four jail phone call recordings. Generally, this court will not consider an alleged error unless the appellant objected at trial. See State v. Baird , 654 N.W.2d 105, 113 (Minn. 2002). Without an objection, this court reviews for plain error. Id. ; see also Minn. R. Crim. P. 31.02. Plain error requires the appellant to show: (1) error, (2) that is plain, and (3) that affects substantial rights. Baird , 654 N.W.2d at 113. If the first three prongs are met, this court "may correct the error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." State v. Crowsbreast , 629 N.W.2d 433, 437 (Minn. 2001) (quotation omitted).
We conclude that the district court did not plainly err for two reasons. First, as pointed out by the state, Shaka's trial attorney also elicited testimony from Bergin regarding Shaka's custodial status. Shaka's attorney stated to the district court, outside the presence of the jury, that he elicited this testimony to show that Shaka had already been prosecuted on related charges and "there [was] a vindictiveness here after my client." Because Shaka also offered evidence that he was in custody, any error in admitting the same evidence as offered by the state was harmless. State v. Juarez , 572 N.W.2d 286, 291 (Minn. 1997) (providing that an error does not mandate reversal and a new trial if this court determines that the error "was harmless beyond a reasonable doubt").
Second, testimony that Shaka was in custody when he violated the DANCO was relevant evidence and was properly admitted as more probative than prejudicial. References to a defendant's incarceration "can be unfairly prejudicial," but there is no "general rule" that such references are per se reversible error. Manthey , 711 N.W.2d at 506. Instead, this court must consider the context of the reference. Id. ; see also State v. Guzman , 892 N.W.2d 801, 813 (Minn. 2017). "The threshold test for the admissibility of evidence is the test of relevancy." Minn. R. Evid. 401 1977 comm. cmt. Generally, evidence is relevant if it has "any tendency to make the existence of any [material] fact ... more probable or less probable."
*771 Minn. R. Evid. 401. All parties are entitled to present relevant evidence at trial so long as the probative value of the evidence is not substantially outweighed by its prejudicial effect. Minn. R. Evid. 403. When determining whether any piece of evidence should be introduced, the court must weigh the probative value of that evidence against the "danger of unfair prejudice." Id.
In order to prove that Shaka violated the DANCO, the state had to establish that (1) there was a DANCO, (2) the defendant knew "of the existence" of the DANCO, and (3) the defendant violated a term of the DANCO. See Minn. Stat. § 629.75, subd. 2(b) (2016). To prove that Shaka violated a term of the DANCO, the state offered evidence that Shaka contacted S.S. by telephone, relying on the jail phone call recordings in which Shaka used his PIN to call S.S., who spoke to him.
Thus, evidence that Shaka was in custody was necessary to establish foundation for the telephone recordings. While evidence of custody status also was prejudicial, we conclude that the district court did not abuse its discretion in admitting the evidence based on its determination that any unfair prejudice did not substantially outweigh the probative value of the evidence. See State v. Johnson , 811 N.W.2d 136, 148 (Minn. App. 2012) (stating that this court reviews admission of evidence under Minn. R. Evid. 403 for abuse of discretion), review denied (Minn. Mar. 28, 2012). We conclude that the district court did not plainly err in admitting evidence that Shaka was in custody at the time he made phone calls in violation of the DANCO.
B. Vindictive prosecution
Shaka also argues that the prosecution "charged [him] with vindictive inten[t]" because he was "acquitted of another offense prosecuted by the same county attorney on the previous case." Shaka argues that the charges underlying his conviction violated his due process and equal protection rights under the Fourteenth Amendment. The state's imposition of additional penalties in retaliation for a defendant's exercise of legal rights is impermissible vindictive prosecution. See State v. Pettee , 538 N.W.2d 126, 132 (Minn. 1995) ("To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " (quotation omitted)). A defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's decision to seek the additional charges was intended to be retaliatory. Id. at 133.
At trial, Shaka's attorney argued to the jury that the earlier prosecution in file number 27-CR-17-7866 showed that the state was biased against Shaka when it pursued the second complaint for the four DANCO violations. Shaka's attorney mentioned the previous case in his opening statement, and asked Bergin about the other charges during his cross-examination. But Shaka did not move to dismiss the charges underlying this appeal based on a violation of his due process rights, nor did he adequately argue to the district court that these charges amounted to vindictive prosecution. This court generally will not decide issues that were not raised before the district court. Roby v. State , 547 N.W.2d 354, 357 (Minn. 1996) ; see also State v. Wickner , 673 N.W.2d 859, 862-63 (Minn. App. 2004) (declining to address appellant's vindictive-prosecution argument because appellant did not raise the issue at trial), review denied (Minn. Mar. 30, 2004).
Because Shaka failed to first present the issue to the district court, Shaka's vindictive-prosecution claim is forfeited. Even so, Shaka's claim lacks merit. The *772 procedural history establishes that the state filed the four DANCO violation charges before Shaka was acquitted in file number 27-CR-17-7866, therefore, the state could not have brought the four DANCO violation charges in retaliation for Shaka's acquittal.
C. Insufficient evidence
Shaka argues that the evidence was insufficient to support the jury's verdict. This court's review of the sufficiency of the evidence is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." State v. Webb , 440 N.W.2d 426, 430 (Minn. 1989). This court assumes "that the jury believed all of the state's witnesses and disbelieved any evidence to the contrary." State v. Chambers , 589 N.W.2d 466, 477 (Minn. 1999).
In addition to asserting that Bergin's testimony about S.S.'s out-of-court statements was inadmissible hearsay, Shaka argues that, even if S.S.'s statements were admissible, she only identified herself as the female voice on two of the four phone calls, which is insufficient to sustain convictions on all four counts. But the record establishes that Bergin testified that the voices and phone numbers on all four calls were the same, and that S.S. was the woman on all four calls. Because we must assume "that the jury believed all of the state's witnesses and disbelieved any evidence to the contrary," Chambers , 589 N.W.2d at 477, we conclude that evidence is sufficient to sustain Shaka's convictions of four DANCO violations.
DECISION
We conclude that the district court did not err in admitting S.S.'s out-of-court statements under the forfeiture-by-wrongdoing exception to the Confrontation Clause because the district court's finding that Shaka caused S.S.'s unavailability for trial was supported by record evidence and was not clearly erroneous. In making this factual finding, the district court was permitted to consider circumstantial evidence that Shaka's phone calls to his family members caused S.S. to fail to appear for trial. We also conclude that Shaka's pro se arguments lack merit. Accordingly, we affirm Shaka's conviction.
Affirmed.

After the second complaint was filed, the state tried Shaka on file number 27-CR-17-7866 and the jury acquitted Shaka of both charges.

The parties disagree about the applicable standard of review. Shaka asserts that this court reviews de novo "whether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause." Caulfield , 722 N.W.2d at 308. The state acknowledges that the "surrounding circumstances relevant to a Sixth Amendment determination are reviewed de novo," but argues that the district court's findings of fact are reviewed for clear error and the district court's decision to admit the evidence is reviewed for an abuse of discretion. See Fields , 679 N.W.2d at 345-47.

The Minnesota Supreme Court has held that our state constitution "affords the same fundamental right [to confrontation as in the U.S. Constitution], and the analysis is the same under both provisions." State v. Henderson , 620 N.W.2d 688, 698 (Minn. 2001).

See also Giles v. California , 554 U.S. 353, 360, 377, 128 S.Ct. 2678, 2683, 2693, 171 L.Ed.2d 488 (2008) (holding forfeiture-by-wrongdoing exception was a founding-era doctrine that required wrongful conduct "designed to prevent the witness from testifying" or use of "an intermediary for the purpose of making a witness absent" and reversing the conviction based on district court's decision to apply the exception without considering whether defendant intended to make a witness unavailable).

The rule of evidence was adopted in 2016, more than five years after the supreme court articulated the exception in Cox . See 779 N.W.2d at 851. Minnesota's rule of evidence for the forfeiture-by-wrongdoing exception is consistent with the federal rule. See Fed. R. Evid. 804(b)(6).

Shaka asserts that this court's unpublished decision in State v. Betancourt supports his argument that the state failed to meet its burden to prove causation. No. A13-0732, 2013 WL 6839895, at *2 (Minn. App. Dec. 30, 2013), review denied (Minn. Mar. 18, 2014). In that case, Betancourt called his mother from jail and asked her "to get the victims to recant and say that he never hurt them." Id. The state also presented evidence that one of the victims told his probation officer and a victim-services representative that he was pressured not to cooperate and testify at trial. Id. at *4. Here, Shaka argues that the state only proved that he made calls to his family, not that these calls actually caused S.S.'s absence at trial.
We are not persuaded that Betancourt provides helpful guidance in this case. First, unpublished decisions are not precedential. Minn. Stat. § 480A.08, subd. 3 (2018) ; Vlahos v. R&I Constr. of Bloomington, Inc. , 676 N.W.2d 672, 676 n.3 (Minn. 2004) ("[U]npublished opinions of the court of appeals are not precedential ... [and] should not be cited by the district courts as binding precedent."). Second, Betancourt is an example of a case where direct evidence established causation, and thus, in that case we did not consider whether circumstantial evidence may also establish that a defendant's wrongful conduct has caused the unavailability of a witness.

Minnesota caselaw has not specifically addressed whether a district court may rely on inferences drawn from circumstantial evidence in applying the forfeiture-by-wrongdoing exception. Before the watershed decision of Crawford , 541 U.S. at 36, 124 S. Ct. at 1354, the Minnesota Supreme Court implied that direct or circumstantial evidence may support a district court's determination that a defendant's conduct had caused a witness's unavailability. See State v. Hansen , 312 N.W.2d 96, 105 (Minn. 1981) (reversing and remanding for new trial because record did not include "any direct or indirect evidence indicating that defendant's conduct had caused" the witness's refusal to testify), abrogation recognized by State v. Bobadilla , 709 N.W.2d 243, 248 (Minn. 2006). The supreme court has considered and rejected wrongful conduct by the defendant as not the cause of a witness's unavailability for trial. See, e.g. , State v. Warsame , 735 N.W.2d 684, 697 n.7 (Minn. 2007) (suggesting no forfeiture even if defendant cut telephone lines to prevent witness from calling 911 because this conduct could not have prevented witness from testifying at trial).

We note that Bernhardt stated this conclusion in the context of holding that appellate courts apply heightened scrutiny in reviewing circumstantial evidence in a sufficiency-of-the-evidence challenge. Id. at 477.