*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0948**

Keegan James Rich Brouillette, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 4, 2024
Affirmed
Ede, Judge**

Scott County District Court
File No. 70-CR-19-10261

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Bjorkman, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**EDE**, Judge

Challenging an order denying postconviction relief, appellant seeks reversal of his conviction for violating a domestic-abuse no-contact order (DANCO). Appellant argues that the district court erred by failing to instruct the jury that the state was required to prove appellant specifically intended that a third party contact the party protected by the DANCO. Because we conclude that the jury instructions were not plainly erroneous and the district court did not abuse its discretion in denying postconviction relief, we affirm.

**FACTS**

Except where otherwise noted, the following undisputed facts are based on the district court's memorandum accompanying its order denying postconviction relief.

***Issuance of DANCO and Charged Conduct***

In November 2018, a district court issued a DANCO in a criminal proceeding that is separate and distinct from this matter. The DANCO prohibited appellant Keegan James Rich Brouillette from having direct, indirect, or third-party contact with H.S. In May 2019, Brouillette appeared for a hearing in his separate criminal case. At the time, Brouillette was in custody; he hoped that the district court would order his release from jail. But Brouillette learned that H.S. had told the state before the hearing that she wanted him to remain in custody. The district court did not release Brouillette.

After the May 2019 hearing, Brouillette "was pissed off" and "just wanted to talk to someone that [he] knew." That same day, Brouillette sent the following message through the jail email system to R.M., a woman he had dated and with whom he had a child: "i'm

2

not getting released for at least another few weeks… lol [H.S.] supposedly showed up and t9ld the prosacu5er 6 m9nths isnt long enough... for real tell that b9tch to stop calling my friends and fam8ly.. f----ing crazy little b--ch..."[1]

Two hours later, R.M. texted H.S. the following message: "Quit calling the jail. Stop harassing his friends and family cuz no one, and I truly mean no one wants to talk to you." About an hour after her text message to H.S., R.M. emailed Brouillette: "but hey ..... you asked me to tell her to stop ..... this is what I sent her in full. I'm blaming the hormones cuz that's a thing and a lot of new moms say and do s--t they shouldn't. So this is what she got from me. Hope you can smile now......" R.M. transcribed her entire text message to H.S. into the email that she sent to Brouillette. Around a half hour later, Brouillette sent the following response to R.M.: "[R.M.] I wasnt askingyou to text her…. i have an ofp and danco against her ..... smh danco means no 3rd person contact...use your head hun.... please save these on ur phone messages because they delete on my end and i might have to show my lawyer..."

The state later charged Brouillette with the offense underlying this appeal, i.e., violating a DANCO within ten years of two or more qualifying domestic violence convictions, in violation of Minnesota Statutes section 629.75, subdivision 2(d)(1) (2018).

*Trial and Sentencing*

The matter proceeded to a jury trial in October 2020. At trial, Brouillette provided the following testimony about R.M.'s decision to contact H.S: "I couldn't even like think

---

[1] In the interest of accurately reflecting the evidence, aside from the omission of intervening letters in swear words, all messages described herein are presented verbatim.

of why she would even like message her, you know." H.S. testified that she did not consider that R.M. had sent the message at Brouillette's direction until after the police contacted her. Instead, H.S. believed the messages were R.M.'s words because they had a similar tone and content as previous messages. H.S. thought R.M. might have been under the influence because R.M. sent H.S. additional messages with similar wording and tone, after the text message described above.

Brouillette stipulated that there was an existing DANCO, that he knew of the existence of the DANCO, and that his conduct occurred within ten years of two prior domestic-violence convictions. The trial transcript reflects that the district court instructed the jury as follows: "The elements of violation of [DANCO] are: first, the defendant violated a term or condition of a [DANCO]. Second, the defendant's act took place on or about May 20, 2019, in Scott County." Brouillette did not object to the jury instructions. The jury found Brouillette guilty of the charged DANCO violation.

In January 2021, the district court sentenced Brouillette to 15 months in prison, stayed execution, and placed Brouillette on probation. At an August 2021 probation-violation hearing, Brouillette admitted that he had violated the terms of his probation. The district court revoked Brouillette's probation and ordered execution of his sentence.

***Postconviction Proceeding***

In January 2023, Brouillette timely petitioned for postconviction relief, arguing that the district court erred by failing to "instruct the jury that [Brouillette] had to intend that a third-party contact the protected party to prove a violation" of the DANCO and that Brouillette was prejudiced by the district court's failure to do so.

4

The postconviction court denied Brouillette's petition, concluding that Brouillette "failed to establish the instructions were plainly erroneous or that his substantial rights were affected" and that the state did not have to prove intent. The postconviction court reasoned that Brouillette's own testimony established that he "had the requisite mental state to be convicted." And the postconviction court determined that, even if the district court had given "the current [jury instructions] as amended, it would not have affected the verdict."

This appeal follows.

**DECISION**

Brouillette contends that we should reverse the postconviction court's order, as well as his DANCO-violation conviction. Brouillette challenges the district court's unobjected-to jury instructions on the elements of the charged crime, which did not require proof that Brouillette specifically intended for R.M. to contact H.S. The state responds that, under current caselaw, it only had to prove that Brouillette knew of the DANCO and that he violated it. We agree with the state.

Appellate courts "review the denial of a petition for postconviction relief for an abuse of discretion." *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). "A postconviction court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id*. (quotation omitted). We review legal issues de novo and factual issues for clear error. *Id*.

5

"While district courts have broad discretion to formulate appropriate jury instructions, a district court abuses its discretion if the jury instructions confuse, mislead, or materially misstate the law." *State v. Lampkin*, 994 N.W.2d 280, 285 (Minn. 2023) (quotation omitted). That said, when a defendant does not object to jury instructions, we review the instructions for plain error. *See State v. Beganovic*, 991 N.W.2d 638, 655 (Minn. 2023). "To establish plain error warranting reversal of a conviction based on an unobjected-to error, an appellant must show (1) an error (2) that is plain (3) that affects a defendant's substantial rights." *Id.* "An error is plain if it 'contravenes case law, a rule, or a standard of conduct.'" *State v. Simion*, 745 N.W.2d 830, 843 (Minn. 2008) (quoting *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). "Under the plain error rule, if [an appellate court] find[s] that any one of the requirements is not satisfied, [it] need not address any of the others." *State v. Lilienthal*, 889 N.W.2d 780, 785 (Minn. 2017) (quotation omitted). And "even when these three prongs are established, a plain error does not justify granting a new trial unless [the appellate court's] failure to do so will cause the public to seriously question the fairness and integrity of our judicial system." *State v. Bey*, 975 N.W.2d 511, 521 (Minn. 2022) (quotation omitted).

Under existing case law, "[i]n order to prove that [a defendant] violated [a] DANCO, the state ha[s] to establish that (1) there was a DANCO, (2) the defendant knew 'of the existence' of the DANCO, and (3) the defendant violated a term of the DANCO." *State v. Shaka*, 927 N.W.2d 762, 771 (Minn. App. 2019) (citing Minn. Stat. § 629.75, subd. 2(b) (2016)), *rev. granted* (Minn. July 16, 2019) *and appeal dismissed* (Minn. Nov. 19, 2019). And specifically as to the charged felony DANCO violation in this case, the

state had to prove the following additional elements: (4) that Brouillette committed the DANCO violation "within ten years of the first of two or more previous qualified domestic violence-related offense convictions," Minn. Stat. § 629.75, subd. 2(d)(1); and (5) that the act took place on or about May 20, 2019, in Scott County, *see State v. Seivers*, ___ N.W.3d ___, ___, 2024 WL 315609, at *3 (Minn. App. Jan. 29, 2024) (explaining that, under article I, section 6 of the Minnesota Constitution and Minnesota Statutes section 627.01, subdivision 1 (2020),[2] "venue [is] an essential element of every criminal offense and . . . the state [is required] to prove beyond a reasonable doubt that the charged offense was committed in the county where the case is being tried," "except when the Minnesota Rules of Criminal Procedure provide otherwise" (quotation and citation omitted)).

Brouillette stipulated that a DANCO existed, that he knew of the DANCO's existence, and that his conduct occurred within ten years of two prior domestic violence-related offense convictions. Thus, the district court's instructions to the jury on the remaining two elements—that they had to find that Brouillette violated a term or condition of a DANCO and that Brouillette's act took place on or about May 20, 2019, in Scott County—did not "contravene[] case law," nor did they violate any "rule" or "standard of conduct." *Simion*, 745 N.W.2d at 843 (quotation omitted).

Brouillette nevertheless relies on *State v. Watkins*, 840 N.W.2d 21 (Minn. 2013), to argue that a DANCO violation is a specific-intent crime. In that case, the supreme court held that the district court committed plain error by omitting the "knowingly" element of

---

[2] The legislature has not amended Minnesota Statutes section 627.01 since 1979.

Minnesota Statutes section 629.75, subdivision 2(d)(1) (2012), when instructing the jury. *Watkins*, 840 N.W.2d at 23, 31. But the 2012 statute at issue in *Watkins* was worded differently than the 2018 statute at issue here. The 2012 version of section 629.75, subdivision 2(d)(1), specifies that a DANCO violation is a felony if a person "knowingly violates" the DANCO statute under certain circumstances. The legislature amended the statute in 2013, and it no longer requires that a DANCO violation be committed "knowingly." *See* 2013 Minn. Laws ch. 47, § 5. Instead, the 2018 statute at issue in this case provides that "a person who knows of the existence of a domestic abuse no contact order issued against the person and violates the order is guilty . . . of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the person violates this subdivision . . . within ten years of the first of two or more previous qualified domestic violence-related offense convictions." Minn. Stat. § 629.75, subd. 2 (2018).

Because of the 2013 amendment,[3] we have recognized in a nonprecedential but persuasive opinion that "the state no longer must prove that a defendant knowingly violated a DANCO." *State v. Weldon*, A16-0533, 2017 WL 2535677, at *3 (Minn. App. June 12, 2017).[4] And because the statute does not specify that a defendant must "intentionally" violate the statute, it likewise follows that, under existing case law, rules, and standards of

---

[3] Since 2013, there have been no further amendments to Minnesota Statutes section 629.75.

[4] *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) ("Nonprecedential opinions . . . are not binding authority . . . , but nonprecedential opinions may be cited as persuasive authority.").

conduct, the state need not prove that a defendant specifically intended for a third party to contact a protected party to prove a DANCO violation. Brouillette's reliance on *Watkins* is therefore misplaced.

Brouillette also cites *State v. Andersen*, 946 N.W.2d 627 (Minn. App. 2020), in support of his position, but this argument is similarly unavailing. *Andersen* concerns Minnesota Statutes section 609.748, subdivision 6(b) (2016), which criminalizes harassment restraining order (HRO) violations. *See Andersen*, 946 N.W.2d at 630. At Andersen's trial for violating an HRO by walking within 100 feet of the protected party's apartment, the state failed to prove that Andersen knew the location of the apartment. *Id.* at 629-30. Reasoning that section 609.748, subdivision 6(b), does not impose strict liability, we reversed Andersen's conviction on sufficiency-of-the-evidence grounds. *Id.* at 633-38. Rather than concluding that HRO violations are specific-intent crimes, we held that, "in a prosecution for violating [an HRO], the state must prove that the defendant knew all the facts that would cause him or her to be in violation of the harassment restraining order," including "that his presence in a particular location would subject him to criminal liability." *Id.* at 628, 637.

*Andersen* is distinguishable. Unlike the appellant in *Andersen*, Brouillette undisputedly knew that the DANCO here prohibited third-party contact. And *Andersen* supports the state's argument that, as to the charged crime's mens rea element, it only had to prove that Brouillette knew the DANCO existed. *See id.* at 632 (observing that "[m]ens rea is the element of a crime that requires the defendant know the facts that make his conduct illegal" (quotation omitted)); *see also Shaka*, 927 N.W.2d at 771 (citing Minnesota

9

Statutes section 629.75, subdivision 2, and stating that the offense's mens rea element is that "the defendant knew of the existence of the DANCO" (quotation omitted)).

In sum, even assuming without deciding that the jury instructions were erroneous because they confused, misled, or materially misstated the law, *see Lampkin*, 994 N.W.2d at 285, Brouillette has failed to establish that the unobjected-to instructions amounted to *plain* error. This is because Brouillette has not shown that the instructions "contravene[] case law, a rule, or a standard of conduct." *Simion*, 745 N.W.2d at 843. The postconviction court therefore did not abuse its discretion by denying Brouillette's postconviction petition, as that exercise of discretion was not arbitrary or capricious, it was not based on an erroneous view of the law, and the postconviction court did not make clearly erroneous factual findings. *See Pearson*, 891 N.W.2d at 596. Because Brouillette has not established that any presumed error is plain—the second prong of the plain-error test—we "need not address any of the others." *Lilienthal*, 889 N.W.2d at 785 (quotation omitted).

**Affirmed.**