*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0269**

State of Minnesota,
Respondent,

vs.

Anthony Ralph Kodlowski,
Appellant.

**Filed January 26, 2026**
**Affirmed**
**Kirk, Judge[*]**

Hennepin County District Court
File No. 27-CR-24-9771

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larkin, Judge; and Kirk, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

Appellant challenges the sufficiency of the evidence supporting a jury's finding that he was guilty of violating a domestic abuse no contact order (DANCO) after the state alleged that he had telephoned the victim from jail, arguing that the evidence was insufficient to support the guilty verdict. We affirm.

**FACTS**

In April 2024, respondent State of Minnesota charged appellant Anthony Ralph Kodlowski with one count of domestic assault against victim S.L.B., his romantic partner, after she contacted police reporting an alleged assault by Kodlowski. The district court issued a DANCO at Kodlowski's first court appearance to prevent him from contacting the victim. The state ultimately dropped the domestic-assault charge because the victim refused to testify after informing the victim advocate that she had fabricated the story. Suspecting that Kodlowski had contacted the victim from jail, the state reviewed the jail call recordings and subsequently amended the complaint to add three felony-level[1] DANCO violations, contending that Kodlowski had contacted the victim from jail three times, once on July 1, 2024, and twice on July 9, 2024. The amended complaint alleged the following: that Kodlowski told the victim in the first July 9 call, "You can tell [the victim advocate] the truth that you made it up or it never happened"; that when the victim asked if she should do it now, Kodlowski instructed her to call, and said that he would call

---

[1] Kodlowski stipulated to having two or more previous qualified domestic-violence related offenses, allowing the state to charge him with felony-level DANCO violations.

the victim back later; that the victim advocate received a call from the victim a few minutes later, in which the victim said that the injuries were actually from her cousin; and that Kodlowski called the victim again afterward, and referencing the call to the victim advocate, the victim stated, "I think she thought I was lying."

At trial, because the victim did not testify, the state introduced other evidence to support the DANCO-violation charges. The state offered body-worn camera footage and audio from the police encounter with both Kodlowski and the victim to identify their voices for the jury to compare with the jail call recordings, authenticated by the police officer who was wearing the body-worn camera. The police officer also testified that the victim contacted him from a cell phone number ending in 7099. The officer further testified that Kodlowski's daughter named ["M."]" was at the house during the encounter.

The state offered the jail call recordings and call logs into evidence, authenticated by the jail records custodian. The records custodian testified that the records show that one call was made using Kodlowski's personal pin number on July 1, 2024, and that two calls were made on July 9, 2024. The two calls on July 9 were not made using Kodlowski's pin number, but the pin was from another inmate named Keanon Buskt-Han, who was housed in the same area as Kodlowski, and both calls were made to the same phone number ending in 7099 that the victim used to contact the police. The two July 9 phone calls were made at 10:33 a.m. and 11:17 a.m. Transcripts from the calls reveal the following: in the July 1 call, the caller refers to the answering party using S.L.B.'s first name, and references someone named "[M.]," and also references contacting a public defender to let them know that "what happened didn't happen." The caller also references an inmate housed with him

3

called "Kean." In the first July 9 call at 10:33 a.m. the caller references an "activist"; the answering party mentions that they were leaving messages for her; and the caller recommends that the answering party call her and "tell them the truth, that you made it up, you know. Or it never happened." In the second July 9 call at 11:17 a.m., the answering party states that "I talked to her" and "[I] think she thought I was lying," and also references a DANCO. The caller also states that he will get off the phone because he doesn't want to "f- up." All three calls end with the exchange of "love you" or "I love you," and "love you too" or "I love you too."

The victim advocate assigned to the victim's case testified that she received a call from the victim on July 9 at approximately 10:50 a.m.,[2] also from the phone number ending in 7099, which matched the number that she had on file for the victim. The victim advocate testified that she received a text from that same number the night before her testimony, stating "Hi . . . it's [S.L.B.]," though she also testified that she had at one time received a text message from that number stating that "this is no longer [S.L.B.'s] number but that they would relay the message that I'm trying to reach out."

The state also provided evidence of the circumstances surrounding the DANCO issuance in addition to the evidence of the jail calls. The DANCO itself was admitted into evidence. The attorney for the state who was present at Kodlowski's first court appearance testified that the judge issued a DANCO, that the judge stated explicitly that the violation

---

[2] This would have been between the first and second July 9 jail calls. The advocate did not testify as to the substance of the call. Ostensibly, this is the call that led the state to believe that Kodlowski was contacting the victim from jail.

of the DANCO could lead to a criminal charge, that the judge either read the order to the defendant verbatim or otherwise explained what constituted prohibited contact, and that the judge signed the DANCO and it was then given to the defendant. The attorney-witness acknowledged that there was no signature or other indication from Kodlowski confirming that he actually read the DANCO, that he had likely received other documents together with the DANCO, and that he was seated together with other defendants behind plexiglass. Kodlowski did not call any witnesses. The jury found Kodlowski guilty as charged.

Kodlowski appeals.

## DECISION

Kodlowski argues on appeal that the evidence was insufficient to prove the required elements of a DANCO violation because the evidence did not preclude a reasonable inference that Kodlowski did not know about the DANCO, or that the jail call recordings may have been of other people, not Kodlowski and the victim. Because we find that the evidence is sufficient to support the jury's finding of guilt , we affirm.

To support a DANCO violation, the state had to establish that (1) there was a DANCO in place, (2) the defendant knew "of the existence" of the DANCO, and (3) the defendant violated the DANCO. *State v. Shaka*, 927 N.W.2d 762, 771 (Minn. App. 2019) (citing Minn. Stat. § 629.75, subd. 2(b) (2022)). Kodlowski argues that the evidence was insufficient to prove either that he knew of the existence of the DANCO or that he violated the DANCO by contacting S.L.B. We address each contention in turn.

5

**I.    The evidence was sufficient to establish that Kodlowski knew of the DANCO's existence.**

Kodlowski's assertion that the evidence was insufficient to prove that he knew of the DANCO's existence is unavailing. Proof of knowledge may be established by circumstantial evidence. *State v. Al-Naseer*, 734 N.W.2d 679, 688 (Minn. 2007). We apply a two-step analysis in reviewing whether circumstantial evidence is sufficient to support a verdict. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). The first step is to determine the circumstances proved. *Id*. We defer to the jury's acceptance of proof and rejection of conflicting evidence in the record and construe conflicting evidence in the light most favorable to the verdict at this first step. *Id.* at 599. At the second step, we determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Id.* We review the evidence as a whole and not as isolated facts. *Id*. "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Stein,* 776 N.W.2d 709, 714 (Minn. 2010) (quotation omitted). We will not reverse a conviction supported by circumstantial evidence based on "mere conjecture"; rather, the appellant must "point to evidence in the record that is consistent with a rational theory other than guilt." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). Circumstantial evidence of knowledge may include evidence that an individual was served with an order and that the terms of the order "clearly and unambiguously prohibit certain conduct." *State v. Gunderson*, 812 N.W.2d 156, 161 (Minn. App. 2012).

6

The circumstances proved here consisted of the state's evidence that Kodlowski was explicitly told the terms of the DANCO and that the DANCO was given to him. The DANCO provides unambiguously that Kodlowski was to have "no contact directly, indirectly or through others, in person, by telephone . . . with the protected person(s) named above." Kodlowski argues that the state's evidence did not disprove the theory that he could not hear the terms of the DANCO being read to him and that he declined to read the DANCO after it was given to him. But these theories are "mere conjecture." *Tscheu*, 758 N.W.2d at 858. Kodlowski scarcely "point[s] to evidence in the record that is consistent with a rational theory other than guilt" beyond suggesting that the circumstances proved could not confirm Kodlowski's subjective knowledge, as he may not have heard the terms being read or seen the DANCO amidst other paperwork. *Id.* The evidence is therefore sufficient to prove Kodlowski's knowledge that the DANCO existed.

## II. The evidence was sufficient to prove that Kodlowski violated the DANCO by contacting the victim from jail.

Contrary to Kodlowski's contention that the circumstantial evidence was insufficient to prove that he contacted the victim, we conclude that there is in fact direct evidence to support the DANCO violations here. "Direct evidence is '[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.'" *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024) (quoting *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017)). Under the direct-evidence standard, "we limit our review to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit

7

the jurors to reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted).

The DANCO prohibited Kodlowski from contacting the victim by telephone. Therefore, the only thing that the state had to prove to establish the DANCO violations was that the voices on the three jail calls belonged to Kodlowski and the victim. The jury was given confirmed audio recordings of both Kodlowski's and the victim's voices to compare with the voices in the jail calls and concluded that the voices belonged to Kodlowski and the victim. This evidence of the similarity between the respective voices is direct evidence because it requires no further inference by the jury to ascertain the identity of the speakers. *See State v. Blevins*, 10 N.W.3d 29, 40 (Minn. 2024) (holding that video recordings are direct evidence). Because the DANCO prohibited Kodlowski from contacting the victim in any case, the evidence that he did so nonetheless is sufficient to support the guilty verdict regardless of the circumstances related to the calls' content. We therefore need not consider the details of the calls' content under the circumstantial evidence framework.

**Affirmed.**